TEXTILE WORKERS UNION OF AMERICA, Local No. 513, et al.

*v.*

BROOKSIDE MILLS, INC.

(*Knoxville,* September Term, 1958.)

Opinion filed June 5, 1959.

E. H. RAYSON, R. R. KRAMER, Knoxville, KRAMER, DYE, McNABB & GREENWOOD, Knoxville, of counsel, for Brookside Mills, Inc.

CREEKMORE, BUHL & THOMSON, MARNE S. MATHERNE, Knoxville, for Textile Workers Union, and others.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

This case was before us heretofore and the opinion is reported in 203 Tenn. 71, 309 S.W.2d 371. The questions on this appeal arise out of the rulings of the Chancellor made on the order of reference.

Said reference was had pursuant to para. 9 of the stipulation which provides as follows:

"That the number of employees and the amount owing to them or any of them, for vacation pay is not presently shown in this record, but if there be a recovery awarded in this action to the complainants or any of them, or to any others on behalf of whom this action is brought, the amount so owing will be determined

either by agreement of the parties or by order of reference to the Clerk & Master and the usual procedure had under such reference.''

After the reference was had and the Master's report was filed, the same was excepted to and recommitted twice before the final acceptance by the Chancellor.

The final ruling of the Chancellor was as follows:

''(a) The term 'continuous service' as used in Art. XVI of the collective bargaining agreement and seniority accumulated by employees under said collective bargaining agreement fall into distinctive categories and the seniority of an employee is not to be taken into account by the Master, nor is it to have any effect whatsoever in computing the amount of vacation pay.

''(b) In order for a given employee to be entitled to vacation pay such employee must have continuous service of six months or more during the vacation pay year beginning July 7, 1955.

''(c) The term 'continuous service' as used in Art. XVI of the collective bargaining agreement contemplates uninterrupted service but such continuous service is not broken by a layoff at the instance and direction of the defendant and is not broken by a brief absence for illness, accident or an emergency in an employee's life. It is broken when an employee is lawfully discharged, when an employee voluntarily and deliberately leaves his employment, or when he volunteers or is required to serve in the armed forces, or when he himself seeks a leave of absence which is granted by the company.''

The Chancellor further held that interest was to be allowed on the amounts due as of the date the vacation pay was due.

■ The ruling of the Chancellor in para. (a) quoted immediately above, is the basis and the sole basis of the appeal by the original complainants, the Textile Union, et al. The efforts in the appeal by these parties is to equate the provisions of Art. VIII with reference to seniority with those of Art. XVI relating to vacation pay to those having continuous service, which latter Article is set out in the original opinion and need not be here copied.

We think it evident that the contract cannot be so construed. Art. VIII, Sec. 1, Subsec. (a) provides:

"Seniority is the right of preference as measured by length of service within the separate departments of the Mill."

As aptly stated by the Chancellor, "seniority rights are built up in many and various ways in this agreement which have no reference to or pertinence to continuous service. For instance, seniority ratings may be maintained even though an employee voluntarily enters the military service and under Art. VIII, Sec. 7, subsec. (f), may retain his seniority for 3 months for any reason and when he returns may bump an employee."

Again, under Sec. 3, under the heading of "Layoff and Recalls" Subsec. (d), it is provided:

"When an employee is forced to take a layoff or chooses to take a layoff rather than bump an employee with less seniority on his shift or any other shift, he

shall continue to build seniority in his original classi-
fication."

There is accordingly no sound basis to expect an em-
ployee to receive vacation pay under circumstances such
as above related. Accordingly, the Chancellor was obvi-
ously correct in his ruling upon this point and the as-
signment in that regard is overruled.

### Brookside Mills' Assignments Of Error

With reference now to the assignments of error in be-
half of the Brookside Mills, the first assignment is that
the Chancellor was in error in holding that the "continu-
ous service" of a given employee was not broken by lay-
off and in directing the computation of vacation pay
accordingly.

It is insisted that the Chancellor should have held that
continuous service meant labor actually performed and
that a layoff at the instance of the company for economic
reasons necessarily broke such continuity.

Counsel has cited a number of cases on the subject and
we have read the same, but we do not deem it necessary
to dwell at length on this point. With one modification,
we approve of the Chancellor's ruling. That is with ref-
erence to layoffs. Of course, under Art. III relating to
management rights, the employer reserved the right "to
employ, *lay off,* re-employ and transfer employees".
Where such layoff was for a substantial period of time
and for economic reasons in good faith, common sense
would dictate that such layoff at the instance of the Com-
pany would effect a break in the continuity of the service.
On the other hand, where the layoff was brief and insub-
stantial, it ought not to be treated as an interruption of

the service. Of course, particular provisions of any contract might work a result opposite to either of the foregoing statements.

Counsel relies strongly on *Kennedy v. Westinghouse Electric Corp.*, 16 N.J. 280, 108 A.2d 409, 47 A.L.R.2d 1025. We hardly see how this case can be of any application, because the gist of this case is that the act of the employees, encouraged by the union, in failing to complete the daily work shift according to schedule was wilful; it was a deliberate interruption brought about by the employees themselves in the utmost bad faith.

On page 415 of 108 A.2d, however, there is some very pertinent language that tends to support the action of the Chancellor in this case. Said the Court:

"We may conclude that 'continuous' service does not contemplate the performance of labor during every scheduled shift hour of every work day. In the very nature of things 'there is really no such thing as continuous labor. Holidays, sicknesses, recreation periods, week-ends, all are breaks in the continuity of one's occupation, but would not necessarily destroy its continuity.' *United States v. Perry*, 8 Cir., 1912, 55 F.2d, 819, 821. Paragraph (d) is to be read, we think, as implying no more than that breaks of service for personal or other reasons which would appeal to reasonable men to be excusable in the particular circumstances shown will not destroy continuity of service. We are dealing here, however with a concerted and deliberate refusal of employees to complete their scheduled shifts — conduct encouraged by the local union officers."

Another case *McDowell v. Farwest Garments, Inc.*, 41 Wash.2d 412, 249 P.2d 372, 373, cited by counsel, was determined on the express language of the contract. It was there held that employees laid off for economic reasons prior to a holiday were found ineligible for holiday pay under their collective bargaining agreement. Counsel failed to state, however, that the agreement contained the following: "Provided the manufacturer has work available for their particular job or operation".

In the final analysis, however, it seems to us that we come down to this point. The exact situation we have before us is not expressly covered by the contract. The parties agree, however, that vacation pay, as stated in the original opinion, is in effect additional wages or compensation and that the right to receive same is entirely dependent upon the contract. Before this situation arose, the employer paid vacation pay to employees in active employment and *to employees who were temporarily laid off at the time vacaion pay for the year became payable and who were expected to be recalled.* That was fair and equitable on the part of the employer and was within the spirit in which all contracts should be interpreted. The employer did not take advantage of a technicality.

█ Now, after many of these employees, beginning with July 7, 1955, have completed six months or more of continuous service or five years or more of continuous service, is it an equitable construction of the contract to say that they, within the spirit of the contract, were to be denied these additional wages or compensation simply because they were discharged before June 1, 1956? A negative answer is required.

The first assignment is overruled.

The second assignment is that the Chancellor erred in construing the agreement to permit the recovery of vacation pay by an employee who had less than six months continuous service in the vacation pay period, i.e., the period beginning July 7, 1955. This assignment is sustained, see the original opinion.

■ The third assignment is that the Chancellor erred in holding that continuous service was to be computed at the commencement of a vacation pay period, i. e., July 7, 1955, rather than at the conclusion thereof and that service would be regarded as continuous though broken during the vacation pay period in question. Clearly, the Chancellor was in error and this assignment is sustained.

The fourth assignment is the Chancellor erred in allowing interest on the vacation pay found due.

■ T.C.A. sec. 47-1607 has no application to the present situation, because they are not liquidated demands assigned by the debtor; in all other cases. Chancellors and juries are given an equitable power to allow interest in the form of damages, if they think it just. The general rule is to allow interest in all cases where the amount of the debt is certain and not disputed on reasonable grounds. Gibson's Suits in Chancery, Crownover, Vol. 1, Sec. 605.

■ Even if it be conceded *arguendo* that "that is certain which can be made certain", still we think that the debt was disputed on reasonable grounds. There is no evidence of bad faith on the part of Brookside Mills. Paragraph 4 of the stipulation explains that it has found it impossible to operate its business successfully because of economic conditions and that it was gradually closing

down operations, etc. It had a right to stand on its good faith interpretation of the contract. The fact that in the final analysis we hold that its interpretation was in part erroneous is not evidence of bad faith. That is all there is to the point and we think there was no reasonable basis for the allowance of interest. The assignment is accordingly sustained.

The fifth and last assignment is the Chancellor erred in requiring payment into court of those amounts found by the Master to be due to individual members of the class who had not intervened as parties to the suit.

The nature of these collective bargaining agreements is discussed in the following two cases: *Earle v. Illinois Central R. Co.,* 25 Tenn.App. 660, 167 S.W.2d 15, and *Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp.,* 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510.

The right of recovery in the final analysis is in the individual employee because of his contractual relationship with his employer, although the collective bargaining agreement does become a part of the contract where the employee, either expressly or implied, adopts the same. That, of course, is the basis on which a class suit of this nature is allowed to be maintained, wherein one or a few of numerous affected parties are allowed to maintain the suit in behalf of the named parties complainant and in behalf of all other parties who may desire to come into the proceedings.

Where there is a common fund or property in *custodia legis,* the usual practice is for the parties to come in and prove their claims. There is no such fund in this case

and we are not familiar with any principles of law or equity on which a judgment could be rendered in behalf of persons not yet parties to the proceedings in some lawful way, even though the record may reflect the amount due them when they do intervene. *Kvello v. City of Lisbon,* 38 N.D. 71, 164 N.W. 305. It, therefore, seems that the Court would not be warranted in requiring the Brookside Mills to pay into court in a lump sum the total possible amount for which they may eventually become actually liable. The decree should be so drawn as to render a judgment in behalf of those who are already parties complainant, which judgment shall be subject to execution according to law; further, that the amounts found by the Master to be due to each named individual shall become a judgment upon such individual filing his intervention identifying himself as being the proper recipient of the particular amount, whereupon the judgment in the particular individual's favor shall become subject to execution according to law. This by analogy to decree for alimony *in futuro,* which are enforceable by execution as each installment becomes due. *Buchholtz v. Buchholtz,* 175 Tenn. 87, 132 S.W.2d 208. The cause should be retained in Court for the purpose of these interventions for a period of time to be agreed upon by counsel or if unable to agree, by the Chancellor. Said individual judgments should bear interest from date of entry.

Obviously, this last assignment is sustained and the decree of the Chancellor as modified is affirmed.