# TEXTILE WORKERS UNION, etc. v. BROOKSIDE MILLS, INC. —341 S. W. (2d) 758.

Eastern Section. June 29, 1960.

Certiorari Denied by Supreme Court October 7, 1960.

Kramer, Dye, McNabb & Greenwood and E. H. Rayson, Knoxville, for appellant.

Creekmore, Buhl & Thomson, Knoxville, for appellees.

McAMIS, P. J.   Brookside Mills, Incorporated, appeals from the Chancellor's decree confirming a report of the Master allowing former employees of defendant certain amounts as "vacation pay."   This is the third appeal in this case.   Opinions in two appeals to the Supreme Court will be found at 203 Tenn. 71, 309 S. W. (2d) 371, and 205 Tenn. 394, 326 S. W. (2d) 671.   One of defendant's principal contentions on this appeal is that the Chancellor's construction of the term "continuous service" is contrary to the opinion of the Supreme Court on the last appeal.   The terms of the contract material to the disputs are set out in the opinion on the first appeal.

Defendant contends that any layoff for more than 30 days breaks the continuity of service required by the contract even though at the instance of defendant and due to economic conditions.

In resolving this issue, two other questions are presented. The first is whether confirmation of the Master's report is based on material evidence. If this question is answered in the affirmative, we must then determine whether the decree is contrary to the opinion of the Supreme Court on the second appeal. 205 Tenn. 394, 326 S. W. (2d) 671.

As to the first question, it appears that the amount allowed under the first report was based solely on seniority. The Supreme Court rejected seniority as the basis for computing vacation pay. The Chancellor thereafter ordered a reference to the Master "to determine what amount defendant owes to the respective employees of the Brookside Mills during the period of time in question for vacation pay, such determination to be made in accordance with the previous decree of this Court as modified by the opinions and decrees of the Supreme Court."

Pursuant to that order the Master, acting in collaboration with W. Ben Davis, an accountant employed by the Master as directed by a previous order of the Chancellor, reported the total amount due to be $34,875.15. This reduced the amount from $44,395.21 allowed by the first report. The second report was accompanied by a copy of the computation attached to the first report. The reductions are indicated by red lines as to individual employees, the corrected amounts being also indicated in red. This second report, dated November 4, 1959, is silent as to whether the Master, in arriving at the amount, relide upon the practice of defendant with regard to the effect of layoffs on classification of employees.

On defendant's exception to the report, the Chancellor entered an order remanding the case to the rules "for

the purpose of taking the evidence of W. Ben Davis so as to inquire into the extent of Mr. Davis' investigation prior to having made his original report to the Clerk & Master."

Thereafter, the deposition of Mr. Davis was taken by complainants and he was cross-examined at length by defendant's counsel. It is earnestly insisted by defendant that the deposition fails to show that his computation of the amounts due employees as vacation pay was based upon or influenced by the practice of defendant, as revealed by its records, to disregard layoffs for economic reasons in determining whether employees fell within the 2% category or the 4% category or whether the period of continuous employment was less than 6 months, in which case no benefits would be due.

While the testimony of Mr. Davis is not as clear and satisfactory as we would like, we can not say the Chancellor erred in construing his testimony as showing that he looked to the records of defendant to determine in what category the employees were placed by defendant. He testified that the corrections made as a result of the Supreme Court holding were the "result of a report submitted by Brookside Mills." (Tr. p. 17.) We have examined that report and find that employees who had been off more than 30 days were left in the 4% category. As an illustration, Vina Bright Ford is shown to have been off from April 8, 1956, until July 19, 1956, but was left in the 4% column. If the Master's allowance due to the fact he used only a "spot check" method included employees who had not been classified by defendant it had an opportunity to develop that fact by cross-examination of Mr. Davis or by bringing forward its records. We would be most reluctant to remand the case again after

two prior appeals so that these records could be introduced.

■ We conclude that evidence of classification by defendant is material evidence supporting the concurrent finding of the Master and Chancellor binding this Court on appeal. Black v. Love, etc. Coal Co., 30 Tenn. App. 377, 206 S. W. (2d) 432; Harriman Welding Supply Co. v. Lake City L. A. Co., 46 Tenn. App. 529, 330 S. W. (2d) 564.

■ We come then to the question of whether the Chancellor's determination of the question of layoffs by defendant for economic reasons is in conflict with the opinion of the Supreme Court on the second appeal.

The record before the Supreme Court, including defendant's assignments of error, is a part of the record on this appeal. Defendant's assignment of error that the Chancellor had erred in not holding "that a layoff at the instance of the company for economic reasons necessarily broke the continuity of such service" was overruled but before doing so the Supreme Court said [205 Tenn. 394, 326 S. W. (2d) 673]:

"Where such layoff was for a substantial period of time and for economic reasons in good faith, common sense would dictate that such layoff at the instance of the Company would effect a break in the continuity of service. · On the other hand, where the layoff was brief and insubstantial, it ought not to be treated as an interruption of the service. Of course, particular provisions of any contract might work a result opposite to either of the foregoing statements."

If we are correct in our conclusion that the basis of the concurrent finding of the Master and Chancellor was a classification of employees by defendant the question of conflict does not arise. The Supreme Court did not deal with that question. In fact the last sentence of the above quotation implies that the contract as construed by the parties might have a bearing on the question. In any event, that sentence of the quotation suggests that the Court was not attempting to lay down a hard and fast rule applicable under all circumstances and regardless of how the parties themselves had construed the contract which would control the decision on the remand.

We think there is applicable the rule of Staten v. State, 191 Tenn. 157, 232 S. W. (2d) 18, 19, where Mr. Justice Burnett said: "What we say in an opinion should be confined to, and limited by, the facts of the case under consideration and the questions necessary for a decision."

It is next insisted the Chancellor erred in decreeing that the suit should remain on the docket of the Chancery Court for the balance of the period of the statute of limitations to allow for possible intervention of employees.

The Court declined to order defendant to pay into Court the total sum which it may ultimately be called upon to pay and provided that employees not now before the Court may intervene, identify themselves and have the benefit of this proceedings. The six year limitation period will expire in about two years. We can not see that the Chancellor abused his discretion or that defendant has been injured by this action of the Chancellor.

■ The final assignment of error is that the Chancellor erred in taxing the fee of Mr. Davis as a part of the costs of the reference.

On March 10, 1958, in ordering a reference as to what amount the defendant owed to each employee, the Court authorized and directed the Master "to hire W. Ben Davis, certified Public Accountant to assist him regarding this reference, *and he shall pay W. Ben Davis, Certified Public Accountant, from any funds coming into his hands.*"

We have italicized the language of the order upon which defendant relies as an adjudication which became final after the lapse of 30 days or the expiration of the term. It is, accordingly, insisted that the Chancellor was without power, at a subsequent term, to tax this fee against it. We do not agree that the order of the Chancellor directing the Master to pay the fee out of funds which it was thought would come into his hands was a final adjudication that defendant would never be taxed with this fee.

The fee due Mr. Davis was a necessary part of the cost of the reference and is, therefore, to be treated as cost, the taxation of which is controlled by T. C. A. sec. 21-1302 providing:

"*Upon the final decree,* the costs shall be paid by the party against whom the court shall adjudge them according to its discretion." (Italics ours.)

At the time the Chancellor directed the payment of this fee out of the funds coming to the Master, it was expected that the entire recovery would be paid into Court. The contrary was later held by the Supreme

Court and it was upon the ground of this change that the Chancellor in the final decree taxed the fee of Mr. Davis to defendant.

Defendant has been relieved of the payment of interest during the years of litigation and, of course, Mr. Davis must be paid for his services. If the fund is not to be paid into Court, the Chancellor may have felt it would be impracticable to collect it from the numerous individuals entitled to recover. Under all the circumstances, we can not say the Chancellor abused his discretion in the taxation of the fee.

Affirmed.

Hale and Howard, JJ., concur.