Thomas ARIZONA, Jr., Appellant
(Plaintiff below),

v.

CITY OF SHERIDAN, a Municipal Corporation, Appellee (Defendant below).

No. 3446.

Supreme Court of Wyoming.

Dec. 9, 1965.

Bruce P. Badley, Sheridan, for appellant.

Harry F. Schwartz, Sheridan, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Justice GRAY delivered the opinion of the court.

Thomas Arizona, Jr., was employed as a maintenance mechanic by the City of Sheridan, Wyoming, for the period of June 20, 1963, to and including August 28, 1964. During this period the city had in effect an informal writing entitled "Personnel Policy of the City of Sheridan, Wyoming," which undertook to prescribe certain conditions of employment, including a provision for vacation pay upon termination of employment. In keeping with such provision Arizona filed a claim with the city for accrued vacation pay; and such claim hav-

ing been denied, Arizona, pursuant to § 15–323, W.S.1957 (since repealed by Ch. 112, § 491, S.L. of Wyoming, 1965), appealed to the district court. From an adverse decision there, Arizona has appealed to this court.

The only question before us is Arizona's contention that the trial court erred in its interpretation of the provisions of the city's policy relating to vacation pay. The material facts are undisputed. The record discloses that the personnel policy of the city was adopted in 1958. The preface clause of the instrument described recited that the general purpose was to accomplish "the best possible municipal service rendered in the most efficient manner" with assurance by the city that it would endeavor "to maintain working conditions and pay at an equitable level" and "seek to provide security of employment to all regular employees whose performance meets reasonable standards." The policy provided for three classes of employees: (a) "seasonal," (b) "probationary," and (c) "regular." A "seasonal" employee was specifically excluded from receiving benefits conferred upon "regular" employees. A "probationary" employee was a new employee selected to fill a position in the "regular forces" of the city and before achieving the status of a regular employee the new employee was required to serve a probationary period of six months. The status of "regular" employee was achieved after serving the probationary period.

The policy with respect to the matter of vacations provided in part:

"The City grants an annual paid vacation to every regular employee who has had continous [sic] service for a period of one year. Regular employees will accrue vacation credits at the rate of one working day of vacation for each full calender month of service. * * * Accrued vacation will be paid to regular employees leaving the city service in good standing."

The trial court, in interpreting the above provision, concluded that an employee was

not entitled to receive vacation pay until such time as the employee had completed the probationary period and continued on in the service of the city for a period of one year as a "regular" employee. As opposed to such conclusion, counsel for Arizona contends that under a proper interpretation of the provision vacation credits "accrue" to an employee during the probationary period as well as during the period of service as a "regular" employee and Arizona, having rendered "continuous service" for a period of fourteen months, is entitled to fourteen days of vacation pay. We think that neither view is entirely correct.

As a general rule instruments which undertake to prescribe conditions of employment between an employer and an employee are to receive a fair, reasonable and liberal interpretation in order to accomplish the purpose intended. Younie v. Doyle, 306 Mass. 567, 29 N.E.2d 137, 139, 131 A.L.R. 379; Textile Workers Union of America, Local No. 513 v. Brookside Mills, Inc., 205 Tenn. 394, 326 S.W.2d 671, 674; 47 Tenn.App. 663, 341 S.W.2d 758; 31 Am. Jur., Labor, § 101, p. 469. The language of an informal instrument, such as we have here, will be scrutinized carefully to determine "the sense in which the party who used the words in question should reasonably have apprehended that the other party would understand them." 4 Williston on Contracts, § 605, p. 358 (3rd Ed.). We have heretofore recognized the reasons underlying the principle in interpreting the provisions of an insurance policy, Wilson v. Hawkeye Casualty Co., 67 Wyo. 141, 215 P.2d 867, 873–874; in interpreting the provisions of an oil and gas lease, McGinnis v. General Petroleum Corporation, Wyo., 385 P.2d 198, 201; and in interpreting a listing of a real estate broker, Goodman v. Kelly, Wyo., 390 P.2d 244, 248. It will be kept in mind also that the provision with which we are dealing primarily must be considered in context with the instrument as a whole.

Reverting to the trial court's conclusion that an employee was not entitled

to vacation benefits unless he had served for a period of one year as a "regular" employee, it seems apparent that such interpretation is premised upon the fact that those benefits were conferred on "regular" employees only. While that is a possible interpretation, we think it is not the most reasonable. Undue emphasis is placed upon the status of the employee. To us the dominant language with respect to the obtaining of benefits is the phrase "who has had continuous service for a period of one year." That appears to be so, in the first instance, because a change in status from a "probationary" employee to a "regular" employee results as a matter of course upon completion of the probation period and continuation of the employment. Furthermore the word "service," as here used, is not to be taken as synonymous with the "status" of the employee. Kennedy v. Westinghouse Electric Corp., 16 N.J. 280, 108 A.2d 409, 414, 47 A.L.R.2d 1025. Its ordinary meaning is the performance of labor for the benefit of another. 79 C.J.S. Service or Services, p. 1140. The word "continuous" preceding the word "service" is also of some significance. Webster's Third New International Dictionary, Unabridged, pp. 493–494 (G. & C. Mirriam Co., Publishers, 1961), defines it as a "stretching on without break or interruption"; an "uninterrupted extension in time or sequence." Thus, when those words forming the phrase "continuous service" are given their ordinary meaning, in context with eligibility requirements for vacation benefits, the implication in point of time is that the one-year period commences to run when the employee begins the performance of labor for the city as a member of its "regular forces." At least that is the sense in which the language could reasonably be understood, and in keeping with the general rule heretofore mentioned we hold that the trial court was in error in refusing to allow any vacation pay to Arizona.

We do agree, however, with the trial court's holding that Arizona accrued no "vacation credits" during the probationary period. The express language of the stated policy confers the privilege of accruing vacation time upon "regular" employees. No mention is made of any other class of employees and we find no language from which such benefit to other than a "regular" employee could be inferred. Furthermore, the trial court's interpretation of the provision is entirely consistent with interrelated provisions fixing a "probationary period" for new employees. Ordinarily the phrase "probationary period," as here used, connotes a period of time for testing the new employee and to withhold from him benefits conferred upon a regular or permanent employee. People ex rel. Thomas v. Board of Education of City of Chicago, 40 Ill.App. 2d 308, 188 N.E.2d 237, 241; Rhine v. International Young Men's Christian Association College, 339 Mass. 610, 162 N.E.2d 56, 59; Allen v. City of New York, 179 Misc. 539, 39 N.Y.S.2d 962, 964, affirmed 266 App.Div. 987, 44 N.Y.S.2d 958, appeal denied 267 App.Div. 760, 45 N.Y.S.2d 933, affirmed 292 N.Y. 567, 54 N.E.2d 688. We think that is the sense in which the language granting the privilege was used and would reasonably be understood. There is no merit in Arizona's contention that the trial court erred in this respect.

The judgment will be reversed and the case remanded to the trial court with instructions to enter judgment for appellant in an amount equal to the vacation credits accrued as a "regular" employee, together with interest from the date Arizona's claim was denied.

Reversed and remanded with directions.