IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
MARCH 3, 2005 Session

## C. R. BATTS CONSTRUCTION, LLC v. 101 CONSTRUCTION COMPANY, ET AL.

**Direct Appeal from the Circuit Court for Rutherford County**
**No. 45736    J. S. Daniel, Judge**

_____

**No. M2004-00322-COA-R3-CV - Filed August 4, 2005**

_____

This appeal arises out of a breach of contract action filed by the plaintiff against the defendants. After a hearing, the trial court entered a judgment in favor of the plaintiff, awarding the plaintiff $24,260.11. Additionally, the trial court awarded the plaintiff pre-judgment interest in the amount of $5,579.82. The defendants have appealed to this Court. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Henry Haile, Nashville, TN, for Appellant

John W. Rodgers, Murfreesboro, TN, for Appellee

**OPINION**

**Facts and Procedural History**

C.R. Batts Construction, LLC ("C.R. Batts" or "Appellee") and 101 Construction Company ("101 Construction") entered into a subcontract agreement on April 23, 2001, wherein C.R. Batts agreed to prepare a site upon which Murfreesboro Fire Hall #11 ("Fire Hall") was to be constructed in Murfreesboro, Rutherford County, Tennessee. Specifically, 101 Construction, the general contractor for the project, employed C.R. Batts, the subcontractor, to excavate and remove portions of mass and trench rock and grade the site so that construction of the Fire Hall could commence.

The terms of the contract included a flat fee of $37,776.00[1] plus an additional $20 per cubic yard of mass rock removed and $75 per cubic yard of trench rock removed. During the course of performance, 101 Construction made four payments on June 8, July 13, November 16, and December 24, 2001, of $4,500.00, $10,660.50, $3,053.14, and $5,966.79, respectively, for a total of $24,180.43.

During the excavation, Verlon Gill ("Gill"), an operator of heavy equipment for C.R. Batts, recorded on each work day the dimensions of the rock areas excavated. Disputes arose between the parties concerning the amount due to C.R. Batts, and, as a result, C.R. Batts temporarily ceased work on two occasions in July and September 2001. In June and July 2001, Judy Stanley ("Stanley"), the office manager for C.R. Batts, was temporarily unable to work, and, as a result, another employee for C.R. Batts, Tim West ("West"), prepared the invoices and sent them to 101 Construction, listing the quantities of trench and mass rock removed. West mistakenly listed the amount of trench rock removed on two invoices, and, as a result, Stanley prepared a corrected invoice in August 2001, listing the proper current amounts of trench and mass rock excavated, and sent this invoice to 101 Construction, effectively cancelling the prior two mistaken invoices. Finally, in December 2001, while C.R. Batts was laying topsoil, the ground froze, and, at this point, 101 Construction terminated the contract before C.R. Batts could resume and complete the project. After terminating the agreement with C.R. Batts, 101 Construction hired two other companies to spread the topsoil, perform the final grading, and clean the site.

On November 13, 2001, C.R. Batts filed a complaint against 101 Construction and Travelers Casualty and Surety Company of America ("Travelers Casualty" or collectively with 101 Construction, the "Appellants"),[2] alleging breach of contract for failure to pay monies due under the contract for labor performed and equipment furnished. C.R. Batts alleged that it excavated 689 cubic yards of mass rock and 99.6 cubic yards of trench rock. Travelers Casualty and 101 Construction denied these amounts excavated and counterclaimed, seeking damages in the form of fees for professionals to determine the amount of rock excavated and attorney's fees pursuant to the contract. The trial court entered a judgment in favor of C.R. Batts and awarded it $24,260.11 plus pre-judgment interest in the amount of $5,579.82. Travelers Casualty and 101 Construction now appeal to this Court and present the following issues,[3] as we perceive them, for our review:

---

[1] Before a hearing, the parties stipulated that, after C.R. Batts began work, the contract price was changed on three occasions: first, it was reduced by $12,518.00, then increased by $1,279.14, and finally, increased again by $655.00. As such, the final flat fee for the contract between the parties is $27,192.14.

[2] Travelers Casualty is the surety for 101 Construction and delivered a bond to the City of Murfreesboro for the protection of persons supplying labor and materials for the work listed in the contract at issue.

[3] Appellants also state in the summary of their argument that "the general contractor is entitled to a set off for [sic] $4052.22 for expenses necessary to complete the work." This conclusory statement asking this Court to require a setoff appears in the summary of the argument, the statement of the issues, and in the conclusion. The Appellants' brief does not address this issue in their argument or otherwise follow our rules of court or the rules of appellate procedure. *See* Tenn. R. App. P. 27(a)(7) (2005); Tenn. Ct. App. R. 6(a) (2005). Appellant also did not

(continued...)

I. Whether the evidence supports the trial court's judgment awarding C.R. Batts $24,260.11; and

II. Whether the trial court abused its discretion when it awarded C.R. Batts $5,579.82 as pre-judgment interest.

For the following reasons, we affirm the judgment of the trial court.

**Standard of Review**

In a civil suit, we review the findings of fact of a trial court judge, sitting without a jury, *de novo* on the record affording those findings a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d) (2005). When a trial court has failed to make specific findings of fact, we must review the record to determine the preponderance of the evidence. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997) (citing *Kemp v. Thurmond*, 521 S.W.2d 806, 808 (Tenn. 1975)). However, we recognize that certain findings of fact are implicit in the trial court's rulings, and we review these implicit findings of fact *de novo* on the record affording these findings a presumption of correctness. *Hollingsworth v. Hollingsworth*, No. 02A01-9103-CV-00043, 1991 Tenn. App. LEXIS 848, at *6 (Tenn. Ct. App. Oct. 31, 1991). We review questions of law *de novo* on the record affording the trial court's decisions no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

**Quantity of Rock Removed**

Appellants argue that Appellee's proof of the quantity of rock removed was unpersuasive and uncertain. Appellants contend that the testimony of their expert, Michael Williams ("Williams"), a licensed land surveyor, establishes that the amount of trench and mass rock excavated by Appellee is much lower than Appellee asserts.

As an initial matter, Appellants argue that the trial court failed to make a factual finding regarding the quantity of rock removed from the work site. As such, Appellants argue that this Court should review the record *de novo* and determine where the preponderance of the evidence lies. We disagree. The trial court's award of $24,260.11 is evidence that the trial court implicitly adopted the testimony of Appellee's witnesses regarding the amount of trench and mass rock excavated. We note the testimony of Stanley under direct examination:

---

[3](...continued)
address this issue at oral argument before this Court. "[A]n issue is waived where it is simply raised without any argument regarding its merits." *Bean v. Bean*, 40 S.W.3d 52, 56 (Tenn. Ct. App. 2000) (citing *Blair v. Badenhope*, 940 S.W.2d 575, 576-77 (Tenn. Ct. App. 1996); *Bank of Crockett v. Cullipher*, 752 S.W.2d 84, 86 (Tenn. Ct. App. 1988)); *see also* Tenn. R. App. P. 27(a)(7) (2005). Were it otherwise, it would require us to have, as Judge Nearn put it, "a degree of clairvoyance with which this Court is not possessed." *Tortorich v. Erickson*, 675 S.W.2d 190, 191 (Tenn. Ct. App. 1984).

Q. (By Mr. Rodgers) Ms. Stanley, let's – as a matter of bookkeeping, stipulations today indicate that there remains a balance payable on the contract under the contract itself for the bid of $3,011.71. Does that sound consistent with your calculations of what's still due from 101 [Construction] under the contract itself?

A. Under the – yes, sir.

Q. Okay. *And then according to the contract the trench rock was billed at $75 per cubic yard, resulting in a total price of $7,467; is that correct?*

A. *Yes, sir.* But may I expound on that just a moment?

Q. Yes, ma'am.

A. We also – they had paid us $1,660.50 on that trench rock.

Q. Well –

A. And let me explain what happened. I was out. I had surgery, and I was gone. And Timmy West that's no longer with us, he did the invoice and sent it to them. I think it's invoice – I've got it here. Invoice here is No. 526, and this is this invoice where I took that off.

Q. Okay.

A. So you see what the balance was on that.

MR. RODGERS: Yes, ma'am.
Your Honor, Mr. Haile and I have agreed as part of our stipulations that the $1660 payment for the trench rock is actually included in what I think is payment No. 2 on the stipulations, $10,660.

THE COURT: All right.

Q. (By Mr. Rodgers) So I – *for mass rock, Ms. Stanley, billed at $20 per cubic yard nets a total invoice amount of $13,781.40 –*

A. *Yes, sir.*

Q. *– leaving a balance still due and owing from – from 101 Construction of $24,260.11. Is that fair to say?*

A. *Yes, sir.*

If the trial court determined that Appellee is entitled to an award of $24,260.11, the amount Stanley testified was due and owing, it means the trial court implicitly found that $3,011.71 was still owed under the contract, that $7,467[4] of trench rock was excavated, and that $13,781.40[5] of mass rock was excavated. After our review of the record, we cannot say that the evidence preponderates against these implicit findings of the trial court.

Appellants hired a licensed land surveyor, Williams, to calculate the amount of rock removed. Williams obtained information about the site from 101 Construction, utilized maps and

_____

[4] This amount divided by $75 per cubic yard means that Appellee charged for the removal of 99.56 cubic yards of trench rock.

[5] This amount divided by $20 per cubic yard means that Appellee charged for the removal of 689.07 cubic yards of mass rock.

a survey of the conditions of the land before construction of the Fire Hall, and used reports of "test pits" at various points on the site to determine an average depth of earth removed by Appellee. Williams testified that his calculation of between 150 and 200 cubic yards of mass rock removed was "purely an estimate." Further, Williams testified that running heavy equipment over earth causes "shrinkage" and that grading of the earth causes "swelling." Williams admitted that his calculations do not consider the possibilities of shrinkage and swelling of the earth. Finally, Williams did not make any estimates as to how much trench rock had been removed.

Appellee, on the other hand, presented the testimony of Gill, who, unlike Williams, personally measured the dimensions of trenches and holes dug by the Appellee's "hoe ram." Gill gave these dimensions to Stanley for a calculation of rock volume removed from the work site. The trial court found that Gill's testimony was not only credible but "very compelling." As our supreme court has previously noted:

> Unlike appellate courts, trial courts are able to observe witnesses as they testify and to assess their demeanor, which best situates trial judges to evaluate witness credibility. *See State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990); *Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991). Thus, trial courts are in the most favorable position to resolve factual disputes hinging on credibility determinations. *See Tenn-Tex Properties v. Brownell-Electro, Inc.*, 778 S.W.2d 423, 425-26 (Tenn. 1989); *Mitchell v. Archibald*, 971 S.W.2d 25, 29 (Tenn. Ct. App. 1998). Accordingly, appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary. *See Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315, 315-16 (Tenn. 1987); *Bingham v. Dyersburg Fabrics. Co., Inc.*, 567 S.W.2d 169, 170 (Tenn. 1978).

*Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). After our review of the record, we cannot say that there is clear and convincing evidence to override the trial court's credibility determination of Gill, nor does the evidence preponderate against the trial court's implicit findings of fact. Therefore, we affirm the trial court's award of $24,260.11 to Appellee.

### Pre-Judgment Interest

Next, Appellants argue that the trial court erred when it awarded Appellee pre-judgment interest in the amount of $5,579.82. Section 47-14-123 of the Tennessee Code provides in pertinent part:

> Prejudgment interest, i.e., interest as an element of, or in the nature of, damages, as permitted by the statutory and common laws of the state as of April 1, 1979, may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum . . . .

Tenn. Code Ann. § 47-14-123 (2001). The Tennessee Supreme Court has articulated the following with respect to our review of an award of pre-judgment interest:

> An award of prejudgment interest is within the sound discretion of the trial court and the decision will not be disturbed by an appellate court unless the record reveals a manifest and palpable abuse of discretion. *Spencer v. A-1 Crane Service, Inc.*, 880 S.W.2d 938, 944 (Tenn. 1994); *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn. 1992). This standard of review clearly vests the trial court with considerable deference in the prejudgment interest decision. Generally stated, the abuse of discretion standard does not authorize an appellate court to merely substitute its judgment for that of the trial court. Thus, in cases where the evidence supports the trial court's decision, no abuse of discretion is found. *See State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978) (applying abuse of discretion standard to trial court's decision to deny request for suspended sentence), *cert. denied*, 439 U.S. 1077, 99 S. Ct. 854, 59 L. Ed. 2d 45 (1979).

*Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).

Trial courts are guided by certain principles in exercising their discretion to award pre-judgment interest. Initially, they are guided by principles of equity. *Id*. (citing Tenn. Code Ann. § 47-14-123).

> Simply stated, the court must decide whether the award of prejudgment interest is fair, given the particular circumstances of the case. In reaching an equitable decision, a court must keep in mind that the purpose of awarding the interest is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize a defendant for wrongdoing. *Mitchell v. Mitchell*, 876 S.W.2d 830, 832 (Tenn. 1994); *Otis*, 850 S.W.2d at 446.

*Id*. The court noted two additional principles to guide trial courts in their decision of awarding pre-judgment interest:

> In addition to the principles of equity, two other criteria have emerged from Tennessee common law. The first criterion provides that prejudgment interest is allowed when the amount of the obligation is certain, or can be ascertained by a proper accounting, and the amount is not disputed on reasonable grounds. *Mitchell*, 876 S.W.2d at 832. The second provides that interest is allowed when the existence of the obligation itself is not disputed on reasonable grounds. *Id*. (citing *Textile Workers Union v. Brookside Mills, Inc.*, 205 Tenn. 394, 402, 326 S.W.2d 671, 675 (1959)).

*Id*. The court further elaborated on the "certainty" principal stating the following: "the test is whether the amount of damages is ascertainable by computation or by any recognized standard of

valuation. This is true even if there is a dispute over monetary value or if the parties' experts compute differing estimates of damage." *Id*. (citing *Unlimited Equip. Lines v. Graphic Arts Centre, Inc.*, 889 S.W.2d 926, 942-43 (Mo. Ct. App. 1994); *Cmty. State Bank v. O'Neill*, 553 N.E.2d 174, 177-78 (Ind. Ct. App. 1990)).

In this case, we cannot say that the trial court abused its discretion when it awarded Appellee pre-judgment interest. Appellee did not have the use of the funds properly due to it. Though the parties disputed the amount of rock excavated, and therefore the amount of damages, there appears to be no dispute that the obligation existed. Finally, the obligation, once the amount of rock excavated was determined, is a certain amount. Therefore, we affirm the trial court's award of pre-judgment interest.

## Conclusion

For the reasons stated above, we affirm the judgment of the trial court. Costs of this appeal are taxed to Appellants, 101 Construction Company and Travelers Casualty and Surety Company of America, and their surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE