IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
OCTOBER 13, 2004 Session

# LORENZO CHILDRESS, JR., d/b/a SOUTHGATE MEDICAL GROUP v. UNION REALTY COMPANY, LTD.

**Direct Appeal from the Circuit Court for Shelby County**
**No. 37267 T.D.     George H. Brown, Jr., Judge**

---

**No. W2003-02934-COA-R3-CV - Filed March 28, 2005**

---

This appeal arises out of an action for damages by a commercial tenant against a landlord. After a jury awarded the appellee the sum of $168,000 in damages, the appellee sought pre-judgment interest, post-judgment interest, and attorney's fees. The trial court awarded the appellee pre-judgment and post-judgment interest calculated on the entire award of damages but denied the appellee's request for an award of attorney's fees. The appellant seeks review of the award of pre-judgment and post-judgment interest, and the appellee cross appeals, seeking review of the trial court's denial of attorney's fees. For the following reasons, we affirm and remand for any further proceedings consistent with this opinion.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

R. Douglas Hanson, Memphis, TN, for Appellant

Bruce D. Brooke, Memphis, TN, for Appellee

## OPINION

### Facts and Procedural History

This is the third occasion this action has appeared before this Court. The facts of this case have been previously articulated by this Court in *Childress v. Union Realty Co., Limited*, 97 S.W.3d 573 (Tenn. Ct. App. 2002), as follows:

> Plaintiff lessee in this case sued Defendant landlord for damages associated
> with loss of personal property, interruption of business, and lost profits which

resulted from the collapse of a roof and flooding of Plaintiff's leased medical offices. The jury awarded Plaintiff $168,000.00 in damages. Defendant appeals, arguing that this is, in effect, a subrogation suit by Plaintiff's insurance carrier.

. . . .

The basic facts in this case are undisputed. In 1981, the plaintiff, Dr. Lorenzo Childress, ("Childress") signed an initial five-year lease with defendant Union Realty Company ("Union Realty") to rent space in the Southgate Shopping Center in Memphis for use as a medical clinic. Childress occupied the space on September 10, 1982, and made approximately $57,000.00 worth of improvements. He purchased over $135,000.00 worth of equipment and supplies for use in the clinic, which served 20 to 30 patients a day. Childress began to experience roof leaks at the clinic in October of 1982. The leaks became a frequent problem, and efforts by Union Realty to repair the roof were unsuccessful. Childress had to place garbage cans beneath the leaks to collect the water, causing considerable embarrassment and inconvenience.

Dr. Childress's first lease expired in September of 1986. After considering the feasibility of relocating the clinic, Childress entered into negotiations with Union Realty for a second lease. After several months of negotiations, the parties entered into a second lease. In light of the continuing problems with roof leaks, however, an additional provision was inserted into the lease. The following language was inserted into paragraph 21 of the lease:

21. LOSS OR DAMAGE TO LESSEE'S PROPERTY

. . . .

*Lessor will be responsible for any damages caused by roof leaks which recur more than four (4) days after Lessor has been given written notice of problem(s).

Paragraph 24 of both the first and second leases required Childress to carry public liability insurance on the property and to list Union Realty as a co-insured. It also required that Childress would hold Union Realty harmless from damage to property on the premises. However, paragraph 24 of the second lease excepted damages "due to the act of negligence of Lessor or its agents" from this hold harmless clause. Union Realty also added paragraph 48 to the second lease. Paragraph 48 is entitled "Waiver of Subrogation" and provides:

Lessee waives and releases any claim or right of recovery against Lessor . . . for any loss resulting from causes covered by insurance, and shall procure a waiver of subrogation against Lessor on the part

of its insurer by and endorsement to all insurance policies whereby the insurer recognizes that the insured has waived any right of recovery from Lessor . . . . A copy of such endorsement shall be deposited with Lessor.

The roof leaks became continually worse and Childress sent numerous complaints to Union Realty, giving notice of extensive damages, interruption of business and embarrassment. On January 19, 1988, Union Realty notified Childress by letter that a new roof would be constructed for the building. On February 1, 1988, however, the roof completely collapsed and the clinic was flooded with rainwater. The clinic and equipment was [sic] ruined and the office had to be closed. Patient records were destroyed and Dr. Childress was unable to salvage his practice. He eventually relocated outside of Tennessee.

Childress filed a complaint against Union Realty in January of 1991, alleging breach of contract when Union Realty refused to pay his water damage claim. Union Realty filed a counter complaint in November of 1992, alleging that Childress breached the same lease by failing to list Union Realty as an additional insured in the policy of insurance and by neglecting to obtain an endorsement of the waiver of subrogation. Union Realty moved for partial summary judgment on the issue of paragraph 24 of the contract on June 2, 1994. This motion was denied and the case was tried before a jury in October of 1997. The jury returned a verdict for Dr. Childress and awarded him $ 168,000.00 in damages. Union Realty filed a motion for a new trial which was denied in March of 1998.

*Childress v. Union Realty Co., Ltd.*, 97 S.W.3d at 575-76 (footnotes omitted).

After this Court affirmed the judgment entered in the trial court below, Childress filed a motion and an amended motion, requesting discretionary costs, attorney's fees, pre-judgment interest and post-judgment interest. After a hearing, the trial court awarded Childress pre-judgment interest in the amount of $150,076.16, post-judgment interest in the amount of $88,054.41, and denied Childress' request for an award of discretionary costs and attorney's fees. Union Realty filed its notice of appeal and requests this Court to review the following issue, as we understand it:

I. Whether the trial court erred when it awarded pre-judgment and post-judgment interest to Childress on the entire amount of the jury award without considering an amount received by Childress prior to the judgment from his insurance company.

Appellee presents the following issue on a cross appeal:

II. Whether the trial court erred when it denied Childress his attorney's fees pursuant to the lease agreement between the parties.

For the following reasons, we affirm and remand for any further proceedings consistent with this opinion.

### Standard of Review

The Tennessee Supreme Court has previously stated the standard by which this Court must review an award of pre-judgment interest:

> An award of prejudgment interest is within the sound discretion of the trial court and the decision will not be disturbed by an appellate court unless the record reveals a manifest and palpable abuse of discretion. *Spencer v. A-1 Crane Service, Inc.*, 880 S.W.2d 938, 944 (Tenn. 1994); *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn. 1992). This standard of review clearly vests the trial court with considerable deference in the prejudgment interest decision. Generally stated, the abuse of discretion standard does not authorize an appellate court to merely substitute its judgment for that of the trial court. Thus, in cases where the evidence supports the trial court's decision, no abuse of discretion is found. *See State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978) (applying abuse of discretion standard to trial court's decision to deny request for suspended sentence), *cert. denied*, 439 U.S. 1077, 99 S. Ct. 854, 59 L. Ed. 2d 45 (1979).

*Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).

Moreover, this Court has previously held that the language of the post-judgment interest statute is mandatory and is not subject to reduction by reason of equitable considerations. *Bedwell v. Bedwell*, 774 S.W.2d 953, 956 (Tenn. Ct. App. 1989) (citing 45 Am. Jur. 2d *Interest and Usury* § 73; *Kaufman v. Kaufman*, 166 S.W.2d 860 (Ky. 1942)). All questions of law are reviewed by this Court *de novo* affording the trial court's decisions no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

### Pre-Judgment Interest

Union Realty first argues that Childress was paid an amount[1] from his insurance company and that any award of pre-judgment interest should reflect this payment rather than strictly focus on the damage award from the jury. Section 47-14-123 of the Tennessee Code provides in pertinent part:

---

[1] Though such amount was not in evidence at trial, Union Realty contends that Childress received $147,714.11 pursuant to an insurance policy with Nationwide Insurance Company. Such evidence was proffered in an offer of proof during trial through the testimony of Childress and William Stevenson, the insurance adjuster for Childress' claim. As we have noted previously, the policy of insurance was not admitted into evidence and, therefore, we cannot consider it here. *Childress v. Union Realty Co., Ltd.*, 97 S.W.3d 573, 577 (Tenn. Ct. App. 2002).

Prejudgment interest, i.e., interest as an element of, or in the nature of, damages, as permitted by the statutory and common laws of the state as of April 1, 1979, may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum . . . .

Tenn. Code Ann. § 47-14-123 (2001). The trial court awarded Childress pre-judgment interest in the amount of $150,076.16.[2] The sum was reached by imposing a 10% per annum rate of interest on the amount the jury designated as damage to personal property: $154,000.00.

As noted above, an award of pre-judgment interest is within the sound discretion of the trial court and will not be disturbed by an appellate court unless we find in the record a manifest and palpable abuse of discretion. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998) (citing *Spencer v. A-1 Crane Service, Inc.*, 880 S.W.2d 938, 944 (Tenn. 1994); *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn. 1992)). Where the evidence supports the trial court's decision, there is no abuse of discretion. *Id.* (citing *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978)).

Trial courts are not without guiding principles in exercising their discretion to award pre-judgment interest. First, they are guided by principles of equity. *Id.* (citing Tenn. Code Ann. § 47-14-123).

Simply stated, the court must decide whether the award of prejudgment interest is fair, given the particular circumstances of the case. In reaching an equitable decision, a court must keep in mind that the purpose of awarding the interest is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize a defendant for wrongdoing. *Mitchell v. Mitchell*, 876 S.W.2d 830, 832 (Tenn. 1994); *Otis*, 850 S.W.2d at 446.

*Id.* The Tennessee Supreme Court has noted two other guiding principles for determining whether an award of pre-judgment interest is proper:

In addition to the principles of equity, two other criteria have emerged from Tennessee common law. The first criterion provides that prejudgment interest is allowed when the amount of the obligation is certain, or can be ascertained by a proper accounting, and the amount is not disputed on reasonable grounds. *Mitchell*, 876 S.W.2d at 832. The second provides that interest is allowed when the existence of the obligation itself is not disputed on reasonable grounds. *Id.* (citing *Textile Workers Union v. Brookside Mills, Inc.*, 205 Tenn. 394, 402, 326 S.W.2d 671, 675 (1959)).

---

[2] We presume that the trial court utilized the method of calculating pre-judgment interest offered by Childress. Childress requested pre-judgment interest on the portion of the jury award designated property damage: $154,000.00. He sought an interest rate of 10% on this amount for the period between February 2, 1988, and October 13, 1997. This calculation yields an amount of $150,076.16.

*Id.*

The supreme court has further elaborated on the "certainty" criterion. While the certainty of the existence or amount of an obligation supports an award of pre-judgment interest, the uncertainty of either the existence or the amount of the obligation does not mandate its denial. *Id.* at 928. "[T]he test is whether the amount of damages is ascertainable by computation or by any recognized standard of valuation. This is true even if there is a dispute over monetary value or if the parties' experts compute differing estimates of damage." *Id.* (citing *Cmty. State Bank v. O'Neill*, 553 N.E.2d 174, 177-78 (Ind. Ct. App. 1990); *Unlimited Equip. Lines v. Graphic Arts Ctr., Inc.*, 889 S.W.2d 926, 942-43 (Mo. Ct. App. 1994)).

To begin, we note there is no evidence in the record showing that Childress received an amount pursuant to an insurance policy with Nationwide Insurance Company. Though Union Realty proffered testimony to support this allegation, such testimony was not admitted into evidence. Further, Union Realty did not cite as error the trial court's exclusion of the insurance policy with Nationwide Insurance Company or the testimony of William Stevenson and Childress presented in an offer of proof. *See Childress v. Union Realty Co., Ltd.*, 97 S.W.3d 573, 577 (Tenn. Ct. App. 2002). For this reason, we may not address whether the exclusion of such proffered evidence pursuant to the collateral source rule was error. *See id.* Finally, we note that trial counsel for Union Realty stated that subrogation was not an issue at trial. Therefore, this Court is left with a record which lacks any evidence of any prior payment of insurance proceeds from Nationwide Insurance Company to Childress.

Union Realty's argument for the reduction of the award of pre-judgment interest is predicated upon the contention that Childress received $147,714.11 from Nationwide Insurance Company. However, because we hold that such an allegation is not in the record, we cannot say that Childress lost the use of the funds such that an award of pre-judgment interest was an abuse of discretion. Further, Union Realty does not appear to argue that the amount of the obligation is uncertain or cannot be ascertained by a proper accounting, and it does not dispute the amount on reasonable grounds. Finally, Union Realty, other than the argument that Childress received an amount from his insurance company, does not dispute the existence of the obligation on reasonable grounds. Therefore, after considering the factors articulated in *Myint v. Allstate Insurance Company*, we cannot say that the trial court abused its discretion when it awarded Childress pre-judgment interest on the amount designated by the jury as damages for personal property.

**Post-Judgment Interest**

Union Realty further argues that the trial court erred when it awarded Childress post-judgment interest on the entire amount awarded by the jury because, as Union Realty contends, Childress received a payment of $147,714.11 from Nationwide Insurance Company pursuant to a policy Childress held with the insurance company. Section 47-14-121 of the Tennessee Code provides the following:

Interest on judgments, including decrees, shall be computed at the effective rate of ten percent (10%) per annum, except as may be otherwise provided or permitted by statute; provided, that where a judgment is based on a note, contract, or other writing fixing a rate of interest within the limits provided in § 47-14-103 for that particular category of transaction, the judgment shall bear interest at the rate so fixed.

Tenn. Code Ann. § 47-14-121 (2001). Further, section 47-14-122 of the Tennessee Code provides that "[i]nterest shall be computed on every judgment from the day on which the jury or the court, sitting without a jury, returned the verdict without regard to a motion for a new trial." Tenn. Code Ann. § 47-14-122 (2001).

As with pre-judgment interest, Union Realty's argument for a reduction of the post-judgment interest award centers around its contention that there was evidence Childress received $147,714.11 from Nationwide Insurance Company or, alternatively, that the trial court erred when it excluded proof of such payment. Again, all proffered testimony and exhibits pertaining to any payment from Nationwide Insurance Company to Childress were excluded by the trial court. Further, Union Realty did not raise the exclusion of this evidence as error in its motion for a new trial. Thus, there is no evidence of such a payment properly before this Court. Therefore, we cannot say that Childress was unjustly enriched, *see Staggs v. National Health Corp.*, 924 S.W.2d 79, 81 (Tenn. 1996), or that the trial court erred when it awarded Childress post-judgment interest at the mandatory rate of 10% on the entire jury award of $168,000.00.

## Attorney's Fees

Finally, on a cross appeal, Childress argues that the trial court erred when it denied him his attorney's fees pursuant to the lease agreement between Childress and Union Realty. As this Court has previously noted,

Tennessee follows the "American Rule" with regard to awarding attorney's fees. Litigants are responsible for their own attorney's fees no matter "however wrongful may have been the suit, or however groundless the defense." *Corinth Bank & Trust Co. v. Security Nat'l Bank*, 148 Tenn. 136, 154, 252 S.W. 1001, 1006 (1923). Thus, the courts will not compel losing parties to pay the prevailing party's legal expenses unless such fee-shifting is authorized by statute, contract, or some other recognized equitable ground. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000); *Kultura, Inc. v. Southern Leasing Corp.*, 923 S.W.2d 536, 540 (Tenn. 1996); *Kimbrough v. Union Planters Nat'l Bank*, 764 S.W.2d 203, 205 (Tenn. 1989).

One of the most common exceptions to the American Rule involves contracts containing provisions expressly allowing the prevailing party to recover its reasonable attorney's fees incurred to enforce the contract. *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 338 (Tenn. 1985); *Pinney v. Tarpley*, 686 S.W.2d

574, 581 (Tenn. Ct. App. 1984). Thus, parties who have prevailed in litigation to enforce contract rights are entitled to recover their reasonable attorney's fees once they demonstrate that the contract upon which their claims are based contains a provision entitling the prevailing party to its attorney's fees.

*Hosier v. Crye-Leike Commercial, Inc.*, No. M2000-01182-COA-R3-CV, 2001 Tenn. App. LEXIS 498, at *6-8 (Tenn. Ct. App. July 17, 2001).

Childress cites the following provision from the lease in support of his argument that he may collect his attorney's fees from Union Realty:

32. RIGHT TO TERMINATE NOT EXCLUSIVE

The right of [Union Realty] to terminate this Lease as herein set forth is in addition to and not in exhaustion of such other rights that [Union Realty] has or causes of action that may accrue to [Union Realty] because of [Childress'] failure to fulfill, perform or observe the obligations, agreement or covenants of this Lease, and the exercise by [Union Realty] of any of the rights or causes of action accruing hereunder shall not be in exhaustion of such other rights or causes of action that [Union Realty] might otherwise have; *and the prevailing party shall recover from the other all attorney's fees and expenses occasioned by the other's default, or failure to perform any of the obligations, agreement or covenants hereof, incurred in enforcing any of the provisions hereof, or any of either party's rights hereunder.*

(emphasis added). Childress contends that this provision entitles him to an award of attorney's fees and that the trial court erred when it denied him these fees.

Union Realty counters by arguing that, because Childress did not specifically request attorney's fees in his complaint, the trial court should not have considered this issue and Childress is not entitled to attorney's fees. We are mindful that, when determining whether a judgment is beyond the scope of the pleadings, those pleadings must be given a liberal construction with all reasonable intendments taken in favor of the judgment. *Killingsworth v. Ted Russell Ford, Inc.*, 104 S.W.3d 530, 533-34 (Tenn. Ct. App. 2002) (quoting *Brown v. Brown*, 281 S.W.2d 492, 497 (Tenn. 1955)). This Court has previously held that failure of a plaintiff to specifically plead attorney's fees in a complaint is not fatal to the recovery of attorney's fees. *Id.* at 534 (holding that, by alleging a violation of the Tennessee Consumer Protection Act, the defendant was effectively put on notice that the plaintiffs were seeking all relief authorized under the Act, including attorney's fees). In this case, though he did not specifically request relief in the form of attorney's fees, he requested in a general prayer "such other costs, expenses and other relief to which the Plaintiff may be entitled in the premises." Additionally, Childress attached a Memorandum of Lease, which was signed by Childress, Andrew Groveman, a vice president of Union Realty, and Lawrence Thomas, another vice president of Union Realty. Such exhibit refers to the second lease between Childress and Union Realty and states that the "terms and provisions are made a part hereof as fully and particularly as if set out verbatim herein." Giving Childress' complaint a liberal construction, we hold Union

Realty was effectively placed on notice that Childress was seeking all relief authorized by the lease, including relief pursuant to paragraph 32.

Union Realty next contends that the trial court's denial of Childress' request for attorney's fees should be affirmed because the issue of attorney's fees was not presented to the jury for a decision, and a jury was demanded by both parties to decide the matters in controversy. "A litigant has a constitutional right to have all issues of fact tried at the same time by the same jury." *Kozy v. Werle*, 902 S.W.2d 404, 412 (Tenn. Ct. App. 1995) (citing *Winters v. Floyd*, 367 S.W.2d 288 (Tenn. Ct. App. 1962)); *see also McCormic v. Smith*, 668 S.W.2d 304, 306 (Tenn. Ct. App. 1984) (citing *Morgan v. Tenn. Cent. Ry. Co.*, 216 S.W.2d 32, 37 (Tenn. Ct. App. 1948)). The issues of whether a plaintiff is entitled to attorney's fees and, if so, the amount of attorney's fees are issues of fact. *McCormic*, 668 S.W.2d at 306. In this case, the parties demanded a jury to try all disputed issues of fact, which includes the issue of attorney's fees. However, no evidence was presented to the jury on this issue. The trial court was not authorized to resolve a jury issue without the interposition of the jury, and, therefore, we cannot say that the trial court erred when it denied Childress' request for attorney's fees. *Kozy*, 902 S.W.2d at 412.

### Conclusion

For the reasons stated herein, we affirm the trial court's award of pre-judgment interest and post-judgment interest. Further, we affirm the trial court's denial of the appellee's request for attorney's fees. Costs of this appeal are taxed equally to appellee, Lorenzo Childress, Jr. d/b/a Southgate Medical Group, and the appellant, Union Realty Company, Limited, and its surety for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE