# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### August 13, 2019 Session

## E SOLUTIONS FOR BUILDINGS, LLC v. KNESTRICK CONTRACTOR, INC., ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 15-62-IV     Russell T. Perkins, Chancellor**

———————————————

### No. M2018-02028-COA-R3-CV

———————————————

This appeal involves payment disputes arising out of a public construction project. Among other things, the case involves claims made by an equipment supplier against a subcontractor, the project's general contractor, and the general contractor's bonding company, and claims made by the same subcontractor against the general contractor. Following a trial, the trial court granted the supplier a judgment against the subcontractor and granted the subcontractor a judgment against the general contractor. The supplier's claim against the general contractor and its bonding company was denied. The propriety of these rulings and numerous other issues are now before this Court. Having reviewed the record transmitted to us on appeal, we affirm in part, affirm in part as modified, reverse in part, and remand the case for such further proceedings as are necessary and consistent with this Opinion.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Modified in Part; Reversed in Part and Remanded

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Paul T. Housch, Nashville, Tennessee, for the appellant, Air Comfort Heating and Cooling, LLC.

Timothy H. Nichols, Nashville, Tennessee, for the appellee, E Solutions for Buildings, LLC.

Adam G. LaFevor, Nashville, Tennessee, for the appellees, Knestrick Contractor, Inc., and Berkley Regional Insurance Company.

**OPINION**

**BACKGROUND AND PROCEDURAL HISTORY**

This case stems from the construction of the Centennial Sportsplex Indoor Fitness Expansion Building by the Metropolitan Government of Nashville and Davidson County ("Metro"). In April 2013, Metro entered into a contract with Knestrick Contractor Inc. ("Knestrick"), pursuant to which Knestrick agreed to construct the Centennial Sportsplex expansion. Under the contract, Knestrick was obligated to accomplish substantial completion of the project by December 2, 2013,[1] and if it failed to do so, Metro was entitled to assess "the sum of $1,000.00 for each calendar day of delay until the Project is Substantially Complete." Knestrick, as principal, and Berkley Regional Insurance Company ("Berkley"), as surety, provided a payment bond in connection with the project.

Following its agreement to serve as a general contractor for the Centennial Sportsplex expansion, Knestrick entered into a subcontract with Air Comfort Heating & Cooling, LLC ("Air Comfort") with respect to the HVAC work required for the project. This subcontract, which was entered into in July 2013, specifically provided that the work must be performed on or before November 27, 2013. Moreover, similar to the prime contract between Metro and Knestrick, the subcontract involving Air Comfort provided that $1,000.00 in liquidated damages could be assessed "for each day that the work remains uncompleted beyond the specified date period."

In furtherance of its required work under the subcontract, Air Comfort sought to purchase certain HVAC equipment. To this end, Air Comfort engaged in negotiations with E Solutions for Buildings, LLC ("E Solutions"). E Solutions sent Air Comfort a proposal regarding the needed HVAC equipment on November 11, 2013, and on November 13, 2013, Air Comfort submitted a purchase order for the equipment. The purchase order recited December 13, 2013 as the delivery date, but in the terms and conditions attached to the purchase order, the following was provided: "Shipment dates are estimates only. No valid contract may be made to ship within or at a specified time unless in writing, signed by an authorized signatory of Seller." There was no liquidated damages provision provided for in the contract between Air Comfort and E Solutions, and the attached terms and conditions further stated that the seller, E Solutions, would "IN NO EVENT . . . BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, OR PUNITIVE DAMAGES." Moreover, the terms and conditions provided that E Solutions' duty to perform was subject to, among other things, the "inability to procure

---

[1] Per an email sent in May 2013, a representative with Metro communicated that a revised construction schedule, establishing a substantial completion date of December 6, 2013, was appropriate based on the time it took Metro to process Knestrick's final contract.

materials from the usual sources of supply" and other causes beyond its "reasonable control."

When the original deadline for completion of the project proved untenable, Metro and Knestrick entered into an amendment whereby the substantial completion date was extended to January 26, 2014. Although no corresponding amendment was formally made regarding the completion date of Air Comfort's work under its subcontract with Knestrick, a Knestrick officer testified that an extension was also passed on to subcontractors. Nonetheless, the ultimate delay accompanying the project's completion has engendered substantial controversy among the parties concerning their respective claims for payment. The project was eventually certified as substantially complete on May 8, 2014.

Litigation subsequently ensued as a result of the construction project. The initiating complaint in this matter, which was filed by E Solutions in the Davidson County Chancery Court ("the trial court") on January 15, 2015, alleged that E Solutions had not been paid for the materials, equipment, and services it provided on the project. In addition to asserting a bond claim against Knestrick and Berkley, E Solutions sued Air Comfort for breach of contract. Further, E Solutions pled an unjust enrichment/quantum meruit claim against Air Comfort and Knestrick.

On February 20, 2015, Air Comfort filed an answer to E Solutions' complaint and also asserted a counterclaim and cross-claim. In its defense to E Solutions' action, Air Comfort asserted, among other things, that E Solutions had materially breached the purchase order with Air Comfort by delaying delivery of the specified HVAC equipment. Air Comfort claimed that it had been damaged by E Solutions' alleged failure to timely deliver the ordered equipment, and it asserted several theories of liability in its cross-claim against Knestrick. Air Comfort alleged that Knestrick was liable for breach of contract by failing to pay it sums owed under the subcontract, and according to Air Comfort, Knestrick should also be held liable for conversion and in violation of the Prompt Pay Act. A bond claim, a claim for unjust enrichment/quantum meruit, and a claim for contribution were also asserted against Knestrick.[2]

On February 24, 2015, Knestrick and Berkley filed an answer to E Solutions' complaint, wherein they prayed that the claims against them be dismissed, and within the same filing, Knestrick separately asserted a cross-claim against Air Comfort. In the cross-claim, Knestrick averred it was entitled to recover $72,000.00 in liquidated damages and alleged that it was entitled to indemnification regarding the action filed against it by E Solutions. Answers to the cross-claims and counterclaim were thereafter filed, and a bench trial was held in the fall of 2016.

---

[2] The bond claim was asserted against Knestrick and Berkley.

On March 17, 2017, the trial court entered its "Memorandum and Final Judgment," wherein it determined that Air Comfort was entitled to a judgment for breach of contract against Knestrick in the amount of $15,000.00. According to the trial court, this was the full extent of Knestrick's liability, and the court declined to award Air Comfort prejudgment interest. Further, the trial court dismissed Air Comfort's claims against E Solutions and E Solutions' claims against Knestrick and Berkley. As for E Solutions' requested relief against Air Comfort, the court awarded it a judgment in the amount of $42,847.98, plus prejudgment interest. Notably, the court's order stated that it was reserving any determination about attorney's fees, expenses, and discretionary costs until appeals in the case concluded.

Several post-trial motions were thereafter filed, and on July 7, 2017, the trial court entered an order addressing them. The court noted that, notwithstanding its previous reservation of certain issues, it had decided to entertain previously stayed issues "[a]t the urging of certain of the parties." In addition to addressing the parties' requests for discretionary costs, the trial court denied Air Comfort's request for attorney's fees. Further, regarding attorney's fees sought by E Solutions, Knestrick, and Berkley, the court held that:

> E Solutions is a prevailing party and is entitled to an award of reasonable attorneys' fees under the contract entered with Air Comfort. The Court, however, hereby DENIES E Solutions application for attorneys' fees, without prejudice, because it is not accompanied by a sworn detailed itemization of the services rendered and the time expended for those particular services as required under Local Rule § 5.05 and Tenn. Sup. Ct. R. 8, RPC 1.5(a)(1). This denial is without prejudice. E Solutions may renew its request for attorneys' fees in this Court after all appeals are exhausted.
>
> . . . .
>
> Knestrick and Berkley are prevailing parties. Knestrick is generally entitled to attorneys' fees under the indemnification provisions[] of the parties' subcontract due to Air Comfort's decision to withhold payment to E Solutions when Air Comfort had no contractual right to do so. The Court, however, hereby DENIES, without prejudice, Knestrick and Berkley's application for attorneys' fees because it lacks the specific itemization required by Local Rule Sec. 5.05 and Tenn. Sup. Ct. R. 8, RPC 1.5, pending the outcome of the appeals.

Although the order was certified as final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure and an appeal was thereafter pursued in this Court, a different

panel of this Court dismissed the previous appeal for lack of subject matter jurisdiction, stating in relevant part as follows:

> Here, the trial court resolved the parties' breach of contract claims and found that E Solutions, Knestrick, and Berkley are contractually entitled to recover their attorney's fees, but the court granted in part and denied in part the request for contractual attorney's fees, without prejudice, directing the parties to re-submit their requests after this appeal. This order was improvidently certified as final. Rule 54.02 "does not allow a trial court to certify an order[ ] that disposes of only some, but not all, elements of damages, as final and appealable." *Cooper v. Powers*, No. E2011–01065–COA–R9–CV, 2011 WL 5925062, at *6 (Tenn. Ct. App. Nov. 29, 2011). "Notably absent from Rule 54.02 is any mention of allowing the certification as final of an order which disposes of certain elements of a claim for damages but leaves the claim pending as to other elements." *Id.* See, e.g., *Johnson v. Tanner–Peck, L.L.C.*, No. W2009–02454–COA–R3–CV, 2011 WL 1330777, at *6 n.8 (Tenn. Ct. App. Apr. 8, 2011) (explaining that an order was not appropriate for certification as final under Rule 54.02 because it did not dispose of a request for treble damages, punitive damages, attorney's fees and the like arising out of the same claim); *Cates*, 1991 WL 168620, at *4 ("Bifurcation of damages is fatal to a 54.02 certification.... While it is proper for the trial court to bifurcate the eviden[t]iary hearings on these damages, it cannot bifurcate the appeal of it."). An award as to only one facet of the total damages is not properly certifiable. *Cates*, 1991 WL 168620, at *4.
>
> We reached the same conclusion on facts similar to those before us in *Toyos v. Hammock*, No. W2011–01649–COA–R3–JV, 2013 WL 177417, at *16–17 (Tenn. Ct. App. Jan. 17, 2013). The trial court had certified its judgment as final pursuant to Rule 54.02 in "an attempt to finalize the judgment" even though the issue of attorney's fees had not been resolved. This Court entered a per curiam opinion finding that we lacked jurisdiction in the matter because the trial court's order failed to adjudicate the request for attorney fees. We likewise find that this Court lacks jurisdiction over the appeal in this matter.

*E Sols. for Bldgs., LLC v. Knestrick Contractor, Inc.*, No. M2017-00732-COA-R3-CV, 2018 WL 1831116, at *4 (Tenn. Ct. App. Apr. 17, 2018) (footnote omitted), *perm. app. denied* (Tenn. Aug. 9, 2018).

Following the remand of the case, the trial court addressed the outstanding issues. In an order entered on October 16, 2018, the trial court ruled on the amount of attorney's fees, discretionary costs, and prejudgment interest owed to E Solutions and awarded

Knestrick and Berkley attorneys' fees and discretionary costs against Air Comfort. A timely notice of appeal was filed by Air Comfort on November 8, 2018, leading to the present appeal.

## ISSUES PRESENTED

This appeal concerns a variety of issues by both Air Comfort and E Solutions. In Air Comfort's brief, the issues presented for our review are as follows:

1. Whether the trial court erred in dismissing Air Comfort's claim of conversion of construction proceeds and Prompt Pay Act claim against Knestrick.
2. Whether the trial court erred in finding that Knestrick was entitled to assess liquidated damages against Air Comfort and only awarding Air Comfort a judgment for $15,000.00 against Knestrick for breach of contract.
3. Whether the trial court erred in awarding E Solutions a judgment for $42,847.98 against Air Comfort.
4. Whether the trial court erred in denying Air Comfort attorney fees under the Prompt Pay Act against Knestrick for withholding a contract payment and retainage payment.
5. Whether the trial court erred in denying Air Comfort discretionary costs against Knestrick.
6. Whether the trial court erred in denying Air Comfort prejudgment interest against Knestrick.
7. Whether the trial court erred in awarding E Solutions Attorney Fees, and Prejudgment interest against Air Comfort.
8. Whether the trial court erred in awarding Knestrick attorney fees and discretionary costs against Air Comfort.

For its part, E Solutions raises the following issues in its appellate brief:

1. Whether the trial court erred in awarding E Solutions a judgment for [only] $42,847.98 against Air Comfort.
2. Whether the trial court erred in awarding E Solutions attorney's fees and prejudgment interest against Air Comfort.
3. Whether E Solutions is entitled to an award of additional attorney's fees on appeal.
4. Whether the trial court erred in not awarding E Solutions a judgment against Knestrick, as principal, and Berkley, as surety, on the payment bond claim.

Knestrick and Berkley have no "Statement of the Issues" section in their brief.

## STANDARD OF REVIEW

This appeal arises from a bench trial. Pursuant to Rule 13(d) of the Tennessee Rules of Appellate Procedure, "review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). We review a trial court's conclusions on questions of law de novo, but no presumption of correctness attaches to the trial court's legal conclusions. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). With respect to a discretionary decision made by a trial court, we review for an abuse of discretion. An abuse of discretion occurs when a court "has applied an incorrect legal standard, has reached a decision that is illogical, has based its decision on a clearly erroneous assessment of the evidence, or has employed reasoning that causes an injustice to the complaining party." *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211-12 (Tenn. Ct. App. 2002).

## DISCUSSION

As indicated above, a host of issues are presented for our review in this appeal. To begin our discussion, we will examine the monetary judgment Air Comfort received against Knestrick. In connection therewith, we will explore whether the amount of the judgment was proper and whether Knestrick was entitled to apply liquidated damages to Air Comfort's claims for payment. Further, we will discuss whether Air Comfort's remedies are limited to breach of contract and examine whether other legal theories, or other specific relief such as attorney's fees, are properly implicated in this case.

The primary dispute between Air Comfort and Knestrick concerns whether Knestrick paid all amounts owed to Air Comfort under the subcontract entered into between the two parties. We address this matter not only in connection with Air Comfort's breach of contract claim, but also with respect to Air Comfort's request for relief pursuant to the Prompt Pay Act, *see* Tenn. Code Ann. § 66-34-101 *et seq.* Of considerable importance to the discussion is Knestrick's contention that it had the right to withhold payments and assess liquidated damages. The proof at trial showed that Knestrick assessed $72,000.00 in liquidated damages against Air Comfort due to delayed performance regarding the HVAC work for the project.

Curiously, although the trial court awarded Air Comfort a judgment for breach of contract upon finding that it should receive a credit for certain of the liquidated damages that had been assessed against it by Knestrick for delayed performance, the court did not find that any violation of the Prompt Pay Act had been committed. It reached this conclusion notwithstanding the fact that Air Comfort had made applications for payment, provided Knestrick notice of nonpayment, and Knestrick had not paid all the amounts owed. The trial court reasoned that a claim under the Prompt Pay Act was "not established" given its "conclusion that the . . . liquidated damages provisions were legally

enforceable." In our view, there is a lack of cohesion between the trial court's factual findings and its legal conclusions. Indeed, even assuming that Knestrick was entitled to assess some amount of liquidated damages against Air Comfort, the trial court itself clearly held that not all of the funds owed to Air Comfort had been paid, as it refused to sanction the entirety of Knestrick's $72,000.00 liquidated damages assessment. As the trial court's order confirms that additional payment was owed to Air Comfort for its work under the subcontract, and the record reflects that this payment was not made despite applications for payment[3] and notice of nonpayment submitted to Knestrick, the conclusion that there was no Prompt Pay Act violation is untenable.

Knestrick vigorously maintains there was no Prompt Pay Act violation because it was entitled to withhold payment from Air Comfort. It notes that under Tennessee Code Annotated section 66-34-303, a contractor may withhold a portion of payment provided that such withheld payment is in accordance with the contract between the contractor and subcontractor, *see* Tenn. Code Ann. § 66-34-303, and here, Knestrick notes that the subcontract at issue allowed for a withholding of liquidated damages. No doubt, the Knestrick-Air Comfort subcontract did provide for liquidated damages, but as already noted, the trial court concluded that Knestrick withheld certain liquidated damages to which it was not entitled. Inasmuch as Knestrick has not challenged the trial court's determination that a credit, and resulting judgment, was owed to Air Comfort regarding the withheld liquidated damages, there is no reasonable dispute that money was owed to Air Comfort when it sought payment from Knestrick in its renewed payment application.

Moreover, even assuming that Knestrick had properly withheld the entirety of the originally assessed $72,000.00 in liquidated damages, the record reflects that additional sums were still owed to Air Comfort. In this vein, we note that Knestrick actually withheld more than $72,000.00 from the balance owed Air Comfort. In a renewed payment application submitted to Knestrick after the project was completed, Air Comfort requested a sum totaling $85,960.50 for unpaid HVAC work on the project. Absent any application of liquidated damages, which is a subject of controversy on appeal, there does not appear to be any reasonable dispute that Air Comfort earned this amount with respect to its performance on the Centennial Sportsplex expansion. The proof readily showed that the HVAC equipment was installed and that the project reached substantial completion. Having performed the contracted work, Air Comfort was owed the balance of its subcontract amount absent a valid application of offsetting damages. Yet, when pressed by this Court at oral argument how *some amount* was not owed to Air Comfort considering $85,960.50 in work under the contract had not been paid and only $72,000.00 in liquidated damages had been assessed, counsel for Knestrick argued that

---

[3] In its brief on appeal, Knestrick remarks that applications for payment were made when Air Comfort's work was not complete, specifically claiming that certain evidence at trial showed that all conditions precedent to final payment were not technically satisfied until May 12, 2014. This argument aside, we note that the record contains evidence that a renewed payment application regarding the amount sought by Air Comfort was made after that date.

his client could have assessed 102 days of liquidated damages. Although such an assessment, if permissible, would have clearly vitiated any right to payment in Air Comfort's favor, Knestrick of course did not assess 102 days of liquidated damages. Moreover, Knestrick has not objected to the trial court's finding that the assessment of 72 days of liquidated damages was itself improper.

In light of the above, although we certainly agree with the trial court that Air Comfort is entitled to a judgment for breach of contract, we respectfully disagree that the Prompt Pay Act was not violated. Simply put, Air Comfort was owed money when it submitted a renewed payment application after the completion of the project, and Knestrick never made payment after receiving notice of nonpayment. This failure to pay not only makes Knestrick liable under the contract, but pursuant to the Prompt Pay Act, makes Knestrick potentially subject to an assessment of attorney's fees. *See* Tenn. Code Ann. § 66-34-602 (providing that where payment is not made after notice of nonpayment, the notifying party may seek relief in chancery court, where reasonable attorney's fees "may be awarded against the nonprevailing party").

Before addressing the matter of attorney's fees under the Prompt Pay Act, we will first review the propriety of the specific contractual amount that the trial court awarded to Air Comfort. As noted earlier, the trial court concluded that Air Comfort was entitled to a judgment in the amount of $15,000.00. Although we can ascertain from where the trial court arrived at this number, *see infra*, the trial court's ruling on this issue has still confused both this Court and the parties[4] on appeal. As further detailed herein, we respectfully conclude that the evidence preponderates in favor of a higher breach of contract judgment than that awarded by the trial court.

The current judgment of $15,000.00 clearly follows from the trial court's effective conclusion that 57 days of liquidated damages, which is 15 days less than 72 days, was the outer limit of a permissible assessment of liquidated damages under the subcontract. In relevant portion, the trial court's order stated as follows:

> [T]he Court determines that Air Comfort is . . . entitled to a fifteen-day credit toward the seventy-two day liquidated damages assessment made by Knestrick against Air Comfort.
>
> . . . .
>
> Air Comfort, therefore, is entitled to a breach of contract judgment against Knestrick in the base amount of $15,000.00.

---

[4] We note that at oral argument, upon questioning by the panel, counsel for Air Comfort and counsel for Knestrick both articulated some confusion as to how the trial court arrived at a judgment of $15,000.00.

Although the court's order therefore unmistakably sets out its basis of Air Comfort's specific $15,000.00 judgment against Knestrick, we fail to comprehend how the judgment is an accurate one based upon the record. Indeed, if an assessment for only 57 days of liquidated damages was proper and the unpaid balance for completed work on Air Comfort's subcontract was over $85,000.00, the judgment should have been higher than $15,000.00. Specifically, assuming that Knestrick was entitled to assess 57 days' worth of liquidated damages, the evidence preponderates in favor of a finding that the judgment should have been $28,960.50 ($85,960.50-$57,000.00).

The propriety of such a modified judgment is itself dependent upon reaching a conclusion that an assessment of liquidated damages for 57 days was even proper. This issue requires our review herein, because perhaps not unsurprisingly, Air Comfort argues that Knestrick was not entitled to assess any liquidated damages against it. For the reasons set forth below, we are in agreement with Air Comfort's position on this issue.[5]

As Air Comfort has pointed out, a party is not allowed to recover liquidated damages "where he is responsible for or has contributed to the delay or nonperformance alleged as breach." *V.L. Nicholson Co. v. Transcon Inv. & Financial Ltd., Inc.*, 595 S.W.2d 474, 484 (Tenn. 1980). Applying this principle in *Airline Construction, Inc. v. Barr*, 807 S.W.2d 247 (Tenn. Ct. App. 1990), this Court held that the trial court in that case should not have awarded liquidated damages to a party that had "at the very least contributed to some of the delays" on a construction project. *Id.* at 262. As we explained:

> Although Barr and the trial court have both pointed to numerous delays that were attributable to Airline, we cannot hold the plaintiff liable for all the delays merely because Airline's delays may have outweighed those occasioned by Barr. The law in Tennessee is contrary to this conclusion. Liquidated damages will not be awarded to one *that has contributed to or mutually caused the delay* or breach. *V.L. Nicholson Company v. Transcon Investment and Financial Ltd., Inc.*, 595 S.W.2d at 484, citing *Glassman Const. Co., Inc. v. Maryland City Plaza, Inc.*, 371 F.Supp. 1154 (D.C. Md. 1974), *aff'd*, 530 F.2d 968 (4th Cir. 1975); 9 Tennessee Jurisprudence, *Damages*, § 29 (1983).

---

[5] Although we agree with Air Comfort's position that Knestrick should not be allowed to recover liquidated damages in connection with this case, we do not find favor in its specific argument that liquidated damages are unavailable due to a withdrawal of a liquidated damages claim. To the extent that Knestrick "withdrew" its claim for liquidated damages, Knestrick merely withdrew a request for a monetary judgment. Indeed, whereas a monetary claim for liquidated damages had clearly been asserted, counsel for Knestrick clarified at trial that Knestrick was not actually seeking a specific monetary judgment for such damages. Instead, counsel made clear that Knestrick was simply seeking confirmation that it had been entitled to previously withhold such funds based on a right to liquidated damages.

The defendant in this case could have recovered "actual" delay damages, *See* Mayo, Tennessee Law of Damages, § 15-5 (1988). However, absent proof of such damages there can be no award.

*Id.*

After Knestrick raised the propriety of its right to assess liquidated damages in its cross-claim against Air Comfort,[6] Air Comfort filed an answer denying that it was responsible for liquidated damages. Among other things, it asserted that Knestrick had delayed the project and construction of the building at the Centennial Sportsplex expansion. This argument is not without substantial support in the record. Similar to the *Airline* case, the party claiming liquidated damages here—Knestrick—clearly contributed to a portion of the delay on the project. The evidence at trial showed that the completion of Air Comfort's HVAC installation work was dependent on the existence of a building, and roof, at the project site. The evidence at trial reflected that Knestrick was responsible for delay relative to the construction of the building that impacted Air Comfort's ability to perform. Indeed, when Knestrick's owner, William Knestrick, was asked at trial whether any causes of delay on the project were Knestrick's responsibility, he responded, "Now I realize that to be the case." Regarding the sequence of activities on the project, we note that several of Air Comfort's tasks on the project were scheduled to start in the fall of 2013. For example, Knestrick's Vice President of Operations, Jerry Thurman, testified specifically concerning two activities, noting that there had been scheduled start dates of September 30, 2013 and October 21, 2013. Air Comfort's ability to complete its work, however, was hindered given the lack of a building on the site. When asked at trial if a building had been erected as of October 2013 for Air Comfort to install mechanical equipment, Mr. Thurman responded, "I would doubt that since the slabs [were] not poured until the 4th of November." Mr. Thurman's testimony further indicated that although Knestrick had not completed the slab until November 4, 2013, such work had originally been scheduled for completion many months earlier, in July 2013. Mr. Thurman testified that the pouring of the slab was a critical path activity, confirming that the building on the site could not be built in the absence of a slab on which to put the building. Necessarily, therefore, the delay in the slab pouring caused delays in the construction of the building, thereby contributing to delayed performance of Air Comfort. According to Mr. Thurman's testimony, it was a "fair statement" that the building may have "been up" by early December 2013 but not all "dried in." For a building to be considered "dried in," Mr. Thurman indicated that it would need, among other things, a roof.

---

[6] Although the cross-claim specifically sought a judgment for $72,000.00 against Air Comfort, Knestrick, as we detailed in a previous footnote, clarified at trial that it was not actually seeking a judgment for that amount in liquidated damages, but rather, confirmation that the previous withholding of that amount as liquidated damages had been proper.

The proof at trial showed that delays on the project were evident fairly early on in the process. Charles Lampley, a senior project manager at Air Comfort, testified that in July 2013, after the subcontract had been signed, he went to the project site. Regarding the status of construction by Knestrick at that time, he stated, "Basically, there was no work done on site." Timeline notes made by Chris Koster, Special Projects Manager with Metro's Board of Parks and Recreation, detailed several aspects of the delay on the project. A note regarding the project status on July 23, 2013 indicated as follows:

> MP demands a recovery action plan from KNI to make up time on the schedule. MP requests KNI to increase needed manpower on site, increase hours and/or weekends, cut float time from the schedule and look at critical path activities to show a method of making up time on the schedule. MP informs KNI that this request has been outstanding for 2 months now and expects it to be delivered to MP by close of business 8.2.13.

A subsequent note regarding August 2, 2013 indicated that the requested recovery plan had not been delivered. Another note regarding a time period spanning from July 2013 to August 2013 indicated as follows: "3 weeks passed without demo of site being completed despite assurances from KNI that this would be a 2 day project."

Included among the many detailed project delays, Mr. Koster's notes have several entries regarding the delayed slab pouring for the project. A note regarding September 17, 2013 stated that "KNI indicates slab pour will now occur at the end of the month." Several subsequent notes for October 2013 detail the slab pouring not having been completed. Given the delays on the project, Metro expressed its concern to Knestrick. In an email sent on October 9, 2013, the Director of the Parks Department noted the "significant contractor delay" and stated that whereas the project should have then been past 50% completion, payment applications indicated it was only at about 10% completion. The email was critical of Knestrick's attention to the matter, noting in relevant part as follows:

> Our project manager has been requesting a Recovery Plan from Knestrick since June demonstrating how you intend to devote resources and manage the construction to get back on schedule. As of this month we still have not seen an effort to provide a recovery plan or devote the resources on site to make up lost time. At this time, this department finds the response by your company to these requests and effort to recover time to be insufficient and unacceptable.
>
> Therefore, the Metro Purchasing director and I would like to meet with you, or whoever is most appropriate within the Knestrick administration, to discuss these and other issues related to performance on this contract and what options are available moving forward.

Knestrick eventually received an extension from Metro to reach substantial completion, and although no formal amendment was reached between Knestrick and Air Comfort, Mr. Thurman testified that the awarded 55-day extension was passed on to subcontractors. The proof showed that the extension was not necessitated by Air Comfort in any way. Moreover, the proof showed that measuring Air Comfort's performance relative to such an extension was improper. Whereas Knestrick had originally sought an 84-day extension, it was untimely in seeking this request from Metro. The trial court itself noted that there were "delays attendant to Knestrick's failure to obtain a full 84-day extension of the original Project schedule," and therefore, the court was of the opinion that a full measure of liquidated damages was improper. In discussing the insufficiency of the awarded extension and taking note of delays attributable solely to Knestrick, the trial court stated as follows:

> The Court concludes that adding 55 days was an insufficient extension for delays that cannot be attributable to any party to this lawsuit, except Knestrick. Because of this delay, the pouring of the slab, for example, was delayed from a completion date of on or about July 1, 2013 (as originally scheduled) until November 4, 2013 (as completed). Knestrick asked for 84 days from Metro but was only awarded 55 days, in part, because Knestrick did not request the extension within the 21-day period for such requests prescribed by the Construction Contract. Similarly, Knestrick did not challenge Metro's award of 55 days or bring Metro into this litigation because it apparently wanted to keep its good business relationship with Metro. Unfortunately, this desire to keep a good business relationship with Metro should not allow Knestrick to summarily pass on all of the liquidated damages it sought to pass on to Air Comfort.

The trial court nonetheless sanctioned the assessment of liquidated damages by Knestrick against Air Comfort. In light of the court's own findings about Knestrick's delay and the proof that Knestrick had contributed to the delay on the project and Air Comfort's performance, we hold that Knestrick's assessment of liquidated damages against Air Comfort was improper. Again, a party is not allowed to recover liquidated damages "where he is responsible for or has contributed to the delay or nonperformance alleged as breach." *V.L. Nicholson Co.*, 595 S.W.2d at 484. Actual delay damages could have been pursued against Air Comfort, *see Airline Constr., Inc.*, 807 S.W.2d at 262, but the trial court's approval of Knestrick's assessment of liquidated damages was improper in light of Knestrick's clear contribution to the delay. Moreover, case law instructs that it would matter not if Air Comfort had been responsible for delays that outweighed those occasioned by Knestrick. *See id.* ("Although Barr and the trial court have both pointed to numerous delays that were attributable to Airline, we cannot hold the plaintiff liable for all the delays merely because Airline's delays may have outweighed those occasioned by Barr. The law in Tennessee is contrary to this conclusion. Liquidated damages will not be awarded to one *that has contributed to or mutually caused the delay* or breach.").

- 13 -

We, therefore, conclude that the evidence preponderates in favor of a finding that the amount owed to Air Comfort is $85,960.50. We hereby modify Air Comfort's judgment against Knestrick in this amount.[7]

Turning to the question of attorney's fees, and as mentioned earlier herein, Knestrick's failure to pay Air Comfort following Air Comfort's notice of nonpayment makes it potentially subject to an assessment of attorney's fees under the Prompt Pay Act. *See* Tenn. Code Ann. § 66-34-602 (providing that where payment is not made after notice of nonpayment, the notifying party may seek relief in chancery court, where reasonable attorney's fees "may be awarded against the nonprevailing party"). Specifically, the statute provides that fees may be awarded if the nonprevailing party has acted in bad faith. *Classic City Mech., Inc. v. Potter S. E., LLC*, No. E2015-01890-COA-R3-CV, 2016 WL 5956616, at *17 (Tenn. Ct. App. Oct. 14, 2016) (quoting Tenn. Code Ann. § 66-34-602(b)). In discussing what constitutes bad faith, a previous panel of this Court stated as follows:

> Although a finding of bad faith is a prerequisite to an award of attorney's fees under the statute, what constitutes bad faith is not statutorily defined. Previous courts have determined that "acts taken in bad faith involve knowing or reckless disregard for contractual rights or duties." *Madden Phillips Constr., Inc.*, 315 S.W.3d at 829 (citation omitted). Moreover, in *Trinity Industries, Inc. v. McKinnon Bridge Co., Inc.*, 77 S.W.3d 159 (Tenn. Ct. App. 2001), we affirmed a trial court's finding that a company had not acted in bad faith when we concluded that we had "no doubt that [the company's] principals honestly believed that their company did not owe the money claimed by [the plaintiff]." *Id.* at 181.

*Id.*

On appeal, Knestrick argues that attorney's fees are improper for two reasons. First, it argues that it cannot have liability for attorney's fees because it is a prevailing party concerning the Prompt Pay Act claim asserted. Second, it argues that certain

---

[7] In addition to pursuing a contractual claim and seeking relief under the Prompt Pay Act, Air Comfort has advanced a separate common law conversion claim. We find no basis to disturb the trial court's rejection of this claim. As one court has noted, "[a] tort action only arises when the act constituting the contract breach also constitutes a breach of a common law duty *independent* of the contractual relationship." *Yinghong Mach. Int'l Ltd. v. Wholesale Equip., Co.*, No. 2:13-cv-02671-JTF-cgc, 2014 WL 12887673, at *4 (W.D. Tenn. Oct. 17, 2014) (citing *Green v. Moore*, No. M2000-03035-COA-R3-CV, 2001 WL 1660828, at *3 (Tenn. Ct. App. 2001)). Here, the alleged conversion is predicated on Knestrick's failure to pay sums allegedly owed in accordance with the subcontract. Being necessarily founded upon a breach of contract, we are of the opinion that the claim fails. *See id.* (dismissing conversion claim for failure to state a claim when the plaintiff alleged breach of contract and failed to show a duty separate and apart from a contractual obligation).

findings by the trial court demonstrate that it acted in good faith. We have already dispensed with the first argument and have concluded that the Prompt Pay Act was violated. Thus, attorney's fees may be awarded if there was bad faith on the part of Knestrick. This requires us to confront Knestrick's second argument concerning the trial court's findings. Although the trial court appeared to dismiss Air Comfort's claim for attorney's fees on the basis that the Prompt Pay Act was not violated, the court also made a number of findings that pertain to the issue of Knestrick's bad faith, or lack thereof. Indeed, Knestrick correctly acknowledges that the trial court held that the parties "had a good faith dispute." Moreover, we observe that the court held that Knestrick's withholding of money was "not wrongful" and "was accomplished in keeping with a claim of right provided under an enforceable contract between the parties." Respectfully, based on our review of this voluminous record, we are of the opinion that the evidence preponderates in favor of a finding that Knestrick did act in bad faith. Indeed, acts in bad faith can include those that involve a "reckless disregard" for contractual rights. *Id.* We are of the opinion that the evidence readily establishes such a standard here, because again, even though $72,000.00 in liquidated damages was assessed, Knestrick failed to pay for completed work under the subcontract that it acknowledged totaled $85,960.50. The amount withheld was thus undeniably several thousand dollars more than the claimed liquidated damages. At a minimum, the evidence supports a conclusion that Knestrick acted in reckless disregard with regard to its withholding of the difference between the balance of the unpaid work completed by Air Comfort and the assessed liquidated damages.[8] In light of our determination that the Prompt Pay Act was violated and our conclusion that the evidence preponderates in favor of a finding that Knestrick acted in bad faith, we hereby remand the case to the trial court for a reconsideration of Air Comfort's request for attorney's fees. *See* Tenn. Code Ann. § 66-34-602(b) (emphasis added) ("Reasonable attorney's fees *may* be awarded against the nonprevailing party; provided, that such nonprevailing party has acted in bad faith.").

Regarding the discretionary costs and attorney's fees awarded against Air Comfort, we hereby reverse these awards. As to the issue of discretionary costs, which is governed by Rule 54.04 of the Tennessee Rules of Civil Procedure, this Court has previously outlined when such costs may be awarded and what factors should accompany a trial court's ruling on the matter:

> A "prevailing party" may request discretionary costs, such as "reasonable and necessary court reporter expenses for depositions or trials, [and] reasonable and necessary expert witness fees for depositions (or stipulated reports) and for trials." Tenn. R. Civ. P. 54.04(2). The purpose of awarding discretionary costs is to help "make

---

[8] Although Knestrick advances the argument that it could have assessed more than $72,000.00 in liquidated damages, we note again that it did not do so. Moreover, as mentioned earlier in this Opinion, it has not challenged the trial court's determination that the liquidated damages it did assess were excessive.

the prevailing party whole," not to punish the losing party. *Owens v. Owens,* 241 S.W.3d 478, 496–497 (Tenn.Ct.App.2007).

When deciding whether to award discretionary costs under Rule 54.04(2), the trial court should:

(1) determine whether the party requesting the costs is the "prevailing party,"
(2) limit awards to the costs specifically identified in the rule,
(3) determine whether the requested costs are necessary and reasonable, and
(4) determine whether the prevailing party has engaged in conduct during the litigation that warrants depriving it of the discretionary costs to which it might otherwise be entitled.

*Mass. Mut. Life Ins. Co. v. Jefferson,* 104 S.W.3d 13, 35–36 (Tenn. Ct.App. 2002) (citations omitted). The burden is on the movant to convince the trial court that it is entitled to discretionary costs, *Carpenter v. Klepper,* 205 S.W.3d 474, 490 (Tenn. Ct. App. 2006); however, as a general matter, courts should "award discretionary costs to a prevailing party if the costs are reasonable and necessary and if the prevailing party has filed a timely and properly supported motion." *Mass. Mut. Life Ins. Co.,* 104 S.W.3d at 35.

Rule 54.04(2) costs expressly address themselves to the sound discretion of the trial court. *Stalsworth v. Grummons,* 36 S.W.3d 832, 835 (Tenn.Ct.App.2000). Accordingly, trial courts are free to apportion the costs between the parties as "the equities of each case demand." *Sanders v. Gray,* 989 S.W.2d 343, 345 (Tenn. Ct. App. 1998). Therefore, on appeal, this Court will not substitute our own discretion for that of the trial court. *State ex rel. Vaughn v. Kaatrude,* 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000).

*Freeman v. CSX Transp., Inc.*, 359 S.W.3d 171, 179–80 (Tenn. Ct. App. 2010).

In this case, the trial court concluded that Knestrick, not Air Comfort, was entitled to discretionary costs. In so ruling, the court held that Air Comfort was not a prevailing party and noted that it had not established a Prompt Pay Act claim. In contrast, the trial court concluded that Knestrick was a prevailing party. Given our previous discussion and the relief awarded herein in Air Comfort's favor, we are of the opinion that Air Comfort should properly be considered the prevailing party as to its claims against Knestrick. Consequently, upon remand of this case, the trial court is directed to consider whether Air Comfort, as the prevailing party, is entitled to discretionary costs, provided Air Comfort files a new motion for discretionary costs within thirty days after the filing of the

- 16 -

mandate by this Court. *See* Tenn. R. Civ. P. 54.04(2) ("In the event an appeal results in the final disposition of the case, under which there is a different prevailing party than the prevailing party under the trial court's judgment, the new prevailing party may request discretionary costs by filing a motion in the trial court, which motion shall be filed and served within thirty (30) days after filing of the appellate court's mandate in the trial court.").

Also at issue is Air Comfort's request for prejudgment interest. In denying prejudgment interest to Air Comfort, the trial court held as follows: "Given that Knestrick withheld the liquidated damages against Air Comfort under a claim of right under an enforceable liquidated damages provision and given that the amount of potential damages was not necessarily liquidated or ascertainable, the Court declines to award Air Comfort prejudgment interest against Knestrick." According to Air Comfort, this ruling should be reversed. For the reasons that follow, we agree.

As pointed out by Air Comfort, trial courts are authorized to award prejudgment interest pursuant to Tennessee Code Annotated section 47-14-123.[9] Although the decision to make such an award is discretionary, *see Story v. Lanier*, 166 S.W.3d 167, 181 (Tenn. Ct. App. 2004) (noting that a trial court "is vested with considerable discretion when determining whether prejudgment interest is warranted"), a trial court's action is not immunized from challenge on appeal. Indeed, "appellate deference is not synonymous with rubber stamping a trial court's decision." *Scholz v. S.B. Int'l, Inc.*, 40 S.W.3d 78, 82 (Tenn. Ct. App. 2000).

In discussing the relevant considerations that must be taken into account regarding a claim for prejudgment interest, the Tennessee Supreme Court stated as follows in *Myint v. Allstate Insurance Co.*:

> Several principles guide trial courts in exercising their discretion to award or deny prejudgment interest. Foremost are the principles of equity. Tenn. Code Ann. § 47–14–123. Simply stated, the court must decide whether the award of prejudgment interest is fair, given the particular circumstances of the case. In reaching an equitable decision, a court must keep in mind that the purpose of awarding the interest is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize a defendant for wrongdoing. *Mitchell v. Mitchell,* 876 S.W.2d 830, 832 (Tenn.1994); *Otis,* 850 S.W.2d at 446.

---

[9] We recognize that inasmuch as we have determined that a violation of the Prompt Pay Act occurred, there appears to be an argument that some interest should have been awarded as a matter of right. Indeed, the Prompt Pay Act provides that "[a]ny payment not made in accordance with this chapter shall accrue interest." Tenn. Code Ann. § 66-34-601. However, no such issue was advanced by Air Comfort, who limited its argument regarding interest to the interest available under Tennessee Code Annotated section 47-14-123.

- 17 -

In addition to the principles of equity, two other criteria have emerged from Tennessee common law. The first criterion provides that prejudgment interest is allowed when the amount of the obligation is certain, or can be ascertained by a proper accounting, and the amount is not disputed on reasonable grounds. *Mitchell,* 876 S.W.2d at 832. The second provides that interest is allowed when the existence of the obligation itself is not disputed on reasonable grounds. *Id.* (citing *Textile Workers Union v. Brookside Mills, Inc.,* 205 Tenn. 394, 402, 326 S.W.2d 671, 675 (1959)).

We note that these criteria, if strictly construed, could prohibit the recovery of prejudgment interest in the vast majority of cases. Indeed, only a liquidated claim, for which prejudgment interest is already recoverable as a matter of right under Tenn.Code Ann. § 47–14–109, can truly be considered an obligation of certain and indisputable amount. Further, it is safe to say that, at trial, defendants usually can articulate at least one good reason for disputing the existence of the obligation, for were it otherwise, defendants would rarely survive summary judgment. Finally, the focus on whether the defendant had a reasonable defense ignores the principle that prejudgment interest is not a penalty imposed on the defendant for indefensible conduct.

Not surprisingly, an analysis of relevant case law reveals that these criteria have not been used to deny prejudgment interest in every case where the defendant reasonably disputed the existence or amount of an obligation. More typically, courts either use the certainty of a claim as support for an award of prejudgment interest, or they do not discuss the certainty of the claim at all. *See, e.g., Mitchell,* 876 S.W.2d at 832 (allowing the award of interest where the existence and amount of the obligation under a settlement agreement were not reasonably disputed); *Otis,* 850 S.W.2d at 446 (allowing the award of interest to a plaintiff whose right to recover under a fire insurance contract was reasonably disputed on the grounds of arson and misrepresentation); *Performance Systems, Inc. v. First American Nat. Bank,* 554 S.W.2d 616, 619 (Tenn.1977) (allowing the award of interest, although the existence of the defendant's obligation under the lease was reasonably disputed); *Johnson v. Tennessee Farmers Mut. Ins. Co.,* 556 S.W.2d 750, 752 (Tenn.1977)(allowing the award of interest, although the amount of recovery under the insurance claim was reasonably disputed); *Uhlhorn v. Keltner,* 723 S.W.2d 131, 138 (Tenn.App.1986) (allowing award of interest in a boundary dispute case, where the existence of any obligation to pay rent and the amount of rent due were both reasonably disputed); *Schoen v. J.C. Bradford & Co.,* 667 S.W.2d 97, 101–

02 (Tenn.App.1984)(rejecting argument that prejudgment interest should not be imposed when defendant appealed in good faith).

*Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927–28 (Tenn. 1998) (footnote omitted). Whereas the Supreme Court noted that past decisions existed where interest was not allowed when there was a good faith dispute, the Supreme Court stated that such cases were overruled "[t]o the extent . . . [they] suggest[ed] that prejudgment interest can never be awarded when a claim is reasonably disputed." *Id.* at 928 n.7.

Writing for this Court, then Judge Koch explained the Supreme Court's action in *Myint* as follows:

> As we construe the *Myint* decision, the Tennessee Supreme Court has shifted the balance to favor awarding prejudgment interest whenever doing so will more fully compensate plaintiffs for the loss of use of their funds. Fairness will, in almost all cases, require that a successful plaintiff be fully compensated by the defendant for all losses caused by the defendant, including the loss of use of money the plaintiff should have received. That is not to say that trial courts must grant prejudgment interest in absolutely every case. Prejudgment interest may at times be inappropriate such as (1) when the party seeking prejudgment interest has been so inexcusably dilatory in pursuing a claim that consideration of a claim based on loss of use of the money would have little weight; (2) when the party seeking prejudgment interest has unreasonably delayed the proceedings after suit was filed; or (3) when the party seeking prejudgment interest has already been otherwise compensated for the lost time value of its money.

*Scholz*, 40 S.W.3d at 83 (internal citations omitted).

In light of the Supreme Court's discussion in *Myint* and this Court's discussion in *Scholz*, we conclude that the trial court's denial of prejudgment interest to Air Comfort was in error. Initially, we fail to comprehend how the court concluded that "the amount of potential damages was not necessarily . . . ascertainable." There was not any dispute that the HVAC work had been performed and completed, and further, it is clear that the work had a certain value under the subcontract. No doubt, Knestrick defended Air Comfort's claim for damages by relying on its own assessment of liquidated damages, but it seems evident that the amount of damages was ascertainable upon resolution of the liquidated damages question. Indeed, the calculation of damages, properly implemented, could have been achieved by simply subtracting the amount of any permissible liquidated damages from the balance owed under the subcontract.

Additionally, it appears that the trial court lost sight of the economic purpose of prejudgment interest. Awards of prejudgment interest are "based on the recognition that

a party is damaged by being forced to forego the use of its money over time." *Id.* at 82. Interest is awarded, not to punish a defendant, but to compensate the wronged party. *Id.* Thus, whereas the bad faith, or lack thereof, of a defendant is not really the proper focal point, the trial court here appeared to place emphasis on this consideration, specifically noting as follows in its denial of prejudgment interest: "Given that Knestrick withheld the liquidated damages against Air Comfort under a claim of right under an enforceable liquidated damages provision . . . the Court declines to award Air Comfort prejudgment interest." Knestrick's own brief characterizes the court's finding as determining that "Knestrick operated under a good faith claim of right." This proffered justification is a significantly devalued one in light of the *Myint* and *Scholz* decisions, and here, we are of the opinion that it cannot properly be invoked to deny Air Comfort prejudgment interest. Again, "[f]airness will, in almost all cases, require that a successful plaintiff be fully compensated by the defendant for all losses caused by the defendant, including the loss of use of money the plaintiff should have received." *Id.* at 83. The trial court's cited justifications do not survive scrutiny here, and there is no question that Air Comfort has been deprived of money that it should have received.[10] We reverse the trial court's denial of prejudgment interest to Air Comfort and remand the case with instructions to calculate and award Air Comfort the prejudgment interest to which it is entitled.

To briefly recap, Air Comfort should be considered a prevailing party in its litigation against Knestrick, which, as noted, has resulted in a much higher modified judgment herein. The award of attorney's fees against Air Comfort is reversed, as is the award of discretionary costs. The trial court is directed to reconsider Air Comfort's request for attorney's fees upon remand, and, if a new motion for discretionary costs is timely filed by Air Comfort, is directed to consider that issue as well. Further, as noted, we agree with Air Comfort that the trial court erred in denying it prejudgment interest.

Having addressed the various questions between Air Comfort and Knestrick, we now turn to the points of dispute between E Solutions and Air Comfort. As noted earlier, the trial court awarded E Solutions a judgment in the amount of $42,847.98. While Air Comfort claims that the trial court erred in awarding E Solutions any judgment, E Solutions argues that the awarded judgment was insufficient. For the reasons that follow, we agree with E Solutions.

The primary dispute between Air Comfort and E Solutions relates to Air Comfort's failure to pay for the equipment it purchased from E Solutions. Testimony at trial revealed that the amount unpaid from certain invoices was $52,847.98, but, when awarding E Solutions a judgment, the trial court reduced this amount by $10,000.00 upon

---

[10] Knestrick obviously disputes that Air Comfort is entitled to the full sum it has claimed, but as we have noted, even Knestrick has not challenged the trial court's decision to award some type of monetary judgment to Air Comfort. Indeed, regarding the credit and resulting judgment afforded to Air Comfort by the trial court, Knestrick states as follows in its brief: "Knestrick avers that the assessment [of the credit] was a proper resolution . . . and should not be overturned on appeal."

finding that E Solutions was responsible for ten days of delay on the project. In support of its position that no judgment should have been awarded to E Solutions, Air Comfort claims that E Solutions materially breached the contract between the two parties by failing to deliver equipment on or before December 13, 2013. We disagree. Although the purchase order recited a December 13, 2013 delivery date, the attached terms and conditions, as we have already noted, indicated that shipment dates were estimates only. Specifically, the terms of the contract provided that "[n]o valid contract may be made to ship within or at a specified time unless in writing, signed by an authorized signatory of Seller." There was no evidence of any such authorization in this case. Moreover, testimony at trial, from representatives of both E Solutions and Air Comfort, revealed that there was no expectation that all equipment would be delivered by December 13. According to Brent Bill, account manager at E Solutions, his client waited to order equipment in order to align delivery of the equipment with the actual need for the equipment:

> I was waiting to be released by Air Comfort and I had conversations with [Mr. Lampley] asking when we should release that equipment.

> Part of the flow of the job, like we mentioned before, is delivering the equipment when it best suits them so they do not have to incur storage fees or transfer fees. So we were trying to provide it just in time for the delivery of the equipment.

Although Mr. Lampley's testimony was somewhat contradictory at places, it did indicate that Air Comfort did not expect delivery of the equipment before December 13 given the lead times. Thus, aside from the fact that the contract did not obligate E Solutions to deliver equipment on or before the claimed December 13 date, there was testimony on both sides evidencing a lack of expectation of any such delivery.

Moreover, as previously stated, the contract between the two parties provided that E Solutions' duty to perform was contingent upon, among other things, the "inability to procure materials from the usual sources of supply" and other causes beyond its "reasonable control." Evidence at trial showed that when E Solutions ordered equipment, it ran into issues of equipment not being available. These manufacturing delays, the court found, were "on balance" outside of E Solutions' control.

In light of all the above, we find no error in the trial court's conclusion that Air Comfort was responsible for paying for the equipment that E Solutions provided. We respectfully disagree, however, with the trial court's decision to reduce the amount of E Solutions' judgment by $10,000.00. As correctly noted by E Solutions, the trial court, upon stating that E Solutions was responsible for ten days of delay, essentially passed down to E Solutions $10,000.00 in liquidated damages that had been assessed against Air Comfort. We agree with E Solutions that this was error. E Solutions was not a party to

- 21 -

Air Comfort's contract with Knestrick, nor did the E Solutions-Air Comfort contract contain a provision allowing for an assessment of liquidated damages. The damages assessed were not in any way foreseeable or tied to a contractual basis in the parties' contract. Even assuming there were delays attributable to E Solutions as the court found, Air Comfort did not present any proof for damages outside of what was in essence a liquidated damages assessment. We therefore agree with E Solutions that there was no basis upon which to reduce the judgment to $42,847.98. We hereby enter a modified judgment in favor of E Solutions against Air Comfort in the amount of $52,847.98.

In addition to awarding E Solutions a base monetary judgment against Air Comfort for breach of contract, the trial court awarded E Solutions attorney's fees and prejudgment interest. On appeal, Air Comfort raises a couple of specific concerns with respect to these awards. For the reasons that follow, we find no error on the part of the trial court.

We turn first to the matter of attorney's fees. A determination of reasonable attorney's fees is a discretionary matter, and "[t]here is no fixed mathematical rule in this jurisdiction for determining reasonable fees." *Killingsworth v. Ted Russell Ford, Inc.*, 104 S.W.3d 530, 534 (Tenn. Ct. App. 2002). On appeal, the sole issue raised by Air Comfort about attorney's fees is that the trial court, relative to a reduction of the fees claimed by E Solutions, estimated that the amount of fees expended in claims against Knestrick and Berkley were one third of the total fees claimed by E Solutions. We fail to discern any error by the trial court. Again, there is no fixed mathematical rule in determining fees, and we are of the opinion that the trial court acted appropriately in attempting to ascertain the amount of fees E Solutions had expended relative to its suit against Air Comfort, as opposed to those fees it incurred against Knestrick and Berkley. Moreover, we observe that the trial court took appropriate account of E Solutions' degree of success when further reducing the amount of fees claimed by E Solutions. Ultimately, by taking these reduction factors into account, the court determined that an award of approximately $51,000.00 in attorney's fees was appropriate despite an initial attorney's fee claim by E Solutions of over $90,000.00. We find no abuse of discretion in the court's determination that this fee was reasonable. Moreover, exercising our own discretion, we are of the opinion that E Solutions is entitled to additional attorney's fees for pursuing its appeal against Air Comfort. The contract between these two parties provided that Air Comfort would be liable for all collection expenses, including reasonable attorney's fees, incurred by E Solutions in attempting to collect any amount due. E Solutions succeeded in this Court in collecting a higher amount for the equipment it supplied, and we therefore remand the matter to the trial court to award E Solutions the reasonable attorney's fees it incurred against Air Comfort on appeal.

Regarding the prejudgment interest awarded to E Solutions, Air Comfort simply maintains that the trial court erred in determining that October 16, 2018 was the operative end date by which prejudgment interest should be calculated. We find no error in the

court's conclusion. The final judgment in this case was not entered until October 16, 2018. The court did not err in allowing prejudgment interest up until that date. Moreover, on remand the trial court should recalculate the award of prejudgment interest to take into consideration the increase in the judgment in favor of E Solutions.

We finally turn our attention to the bond claim asserted by E Solutions. In doing so, we initially note that pursuant to Tennessee Code Annotated section 12-4-201 *et seq.*, the General Assembly has created provisions "to provide protection for furnishers of labor and material on public works because these workmen are not protected by the mechanics' and materialmen's lien laws." *Wal-Bd. Supply Co., Inc. v. Daniels*, 629 S.W.2d 686, 687 (Tenn. Ct. App. 1981). These provisions "provide that no contract may be let for a public project until the contractor executes a bond containing provisions required by the statute and to the effect that he will pay for all labor and material used in the project." *Id.* As we have already noted, a payment bond was provided in this case in connection with the Centenntial Sportsplex expansion project for Metro. Knestrick was the principal under the bond, with Berkley serving as surety.

As a result of E Solutions' failure to receive payment for the equipment it provided for the Centennial Sportsplex expansion, E Solutions asserted a bond claim against Knestrick and Berkley. At trial, the proof showed that $52,847.98 was owed to E Solutions under unpaid invoices, and further, there was testimony from Charlene Leonard, one of E Solutions' owners, establishing that E Solutions had furnished a claim under the payment bond. The specific notice of claim given by E Solutions was introduced as an exhibit at trial.

Counsel for Knestrick and Berkley conceded at trial that the bond claim had been timely made, and there does not appear to be any dispute that E Solutions was not paid the outstanding $52,847.98 under its invoices. The trial court, however, rejected the bond claim and held as follows:

> The Court concludes that E Solutions is not entitled to judgment against Knestrick and Berkley on the bond claim because of the Court's ruling that Knestrick is not liable to E Solutions and given that E Solutions' bond claim is derivative; it cannot be realized unless and until Air Comfort fails to pay the judgment it owes to E Solutions. Alternatively, it is not clear from the Complaint that E Solutions was pursuing a statutory bond claim.

As for the court's lack of clarity about whether this case involved a statutory bond, we observe that the payment bond, a copy of which was attached to E Solutions' complaint, contains a provision expressly stating as follows:

> When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be

performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. When so furnished, the intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

As for the trial court's specific conclusion that there can be no recovery on the bond claim until Air Comfort fails to pay the judgment it owes to E Solutions, we respectfully disagree. We are unaware of any such limiting requirement, and we observe that the statute itself simply provides that "[a]ny laborer or furnisher of labor or material to the contractor, or to any immediate or remote subcontractor under the contractor, may bring an action on the bond, and have recovery in such laborer's or furnisher's own name." Tenn. Code Ann. § 12-4-204. Moreover, as E Solutions has illustrated in its appellate brief, there are a number of practical problems in holding that a bond claim is not available until a claimant has failed to collect from the party with whom it has contracted. As E Solutions argued:

> If a bond claim is not "ripe" until the claimant has failed to collect on a judgment against that entity it contracted with, how can the bond claimant also comply with the very short deadline for providing notice of the bond claim as required by T.C.A. § 12-4-205? If a bond claim is not "ripe" until the claimant has failed to collect on a judgment against that entity it contracted with, how can the bond claimant also comply with the six month statute of limitations for a bond claim set out in T.C.A. § 12-4-206?

As it is, there is no dispute that a timely bond claim was made. Further, the proof showed that E Solutions was not paid $52,847.98 under its invoices. In light of the foregoing, we reverse the trial court on this issue and remand for the entry of a judgment allowing recovery on E Solutions' bond claim including prejudgment interest and attorney's fees.

## CONCLUSION

For the reasons discussed above, we affirm in part, affirm in part as modified, reverse in part, and remand the case for such further proceedings as are necessary and consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE